HOUSH, APPELLEE, *v.* PETH, APPELLANT, ET AL.

(No. 2320—Decided April 6, 1955.)

*Mr. James C. Baggott,* for appellee.
*Messrs. McLeran, Kelly & McLeran,* for appellant.

Wiseman, J. This is an appeal on questions of law from a judgment of the Common Pleas Court of Montgomery County, Ohio, entered in favor of plaintiff, in an action for damages for the invasion of plaintiff's "right of privacy." The cause was tried to a jury which rendered a verdict against the defendant Mark A. Peth in the sum of $3,000. Motion for judgment *non obstante veredicto* was overruled. In entering judgment on the verdict, the trial court granted a remittitur in the amount of $1,000 and entered judgment for $2,000.

Because of the unusual nature of this litigation and the novel legal question raised we quote the pertinent part of the amended petition, as follows:

"Plaintiff for her cause of action says that Mark A. Peth and Mary C. Peth * * * are engaged in the collection business on behalf of various creditors of diverse and sundry individuals including this plaintiff.

"Plaintiff further says that she is indebted to Dr. L. A. Lydic in the amount of one hundred ninety-seven ($197) dollars * * *.

"Plaintiff further says that the defendants called her on the telephone harassing and annoying her many times in the course of a day with regard to this collection and did call and annoy the plaintiff at her place of employment three times within 15 minutes on March 19, 1954; that as a result thereof, the plaintiff's employer told her on March 19, 1954, that unless this collection is 'straightened up' on or before March 23, 1954, that the plaintiff would thereupon be discharged from her employment.

"Plaintiff further says that the defendants have called the Supervisor of Music of the Dayton Public Schools and have called the plaintiff's landlord regarding said collection claiming the plaintiff did not pay her bills and inquiring as to her earnings, and for a period of approximately two weeks immediately prior to filing her petition herein, the defendants called the plaintiff at her place of residence eight or nine times a day dunning her for this collection, giving her notices and warnings and called her as late as 11:45 p. m., which calls were calculated to coerce the plaintiff into payment and which constant an-

noyance by the telephone caused the plaintiff to lose one of her roomers and a part of her income.

"Plaintiff further says that such constant daily annoyance and malicious calls to her, her employer and her landlord have constituted an invasion of her right of privacy and caused her nervousness, worry, humiliation, mental anguish and loss of sleep; * * * that unless restrained and permanently enjoined therefrom the defendants will continue to threaten, worry, annoy and humiliate her and cause her loss of sleep and loss of employment and further loss of income from her roomers, and unless restrained and permanently enjoined therefrom, will continue in the unlawful practice of law; that as a result of the foregoing, she has been damaged in the sum of ten thousand ($10,000) dollars."

The defendant Mark A. Peth filed an answer, the pertinent part of which is as follows:

"Now comes the defendant, Mark A. Peth, and for his answer to the amended petition of the plaintiff, does admit that he is the owner and operator of a collection business known as Doctors Business Bureau, * * * but does deny that the defendant, Mary C. Peth, has any interest in said collection business.

"Further answering, defendant says that in connection with his operation of the Doctors Business Bureau, he received an account from Dr. L. A. Lydic of Dayton, Ohio, against the plaintiff herein in the amount of $225, and that the plaintiff was contacted a number of times in an attempt to secure collection of said account. * * * Defendant says that when plaintiff failed to pay the note at the end of the week, he contacted her further by telephone and did also call her at her place of business on the 19th day of March, 1954, but that plaintiff has made no further payments upon said note or account from the 15th day of February until the date of the filing of this answer.

"Defendant admits that he called the plaintiff a number of times at her home during the business hours of the day, and may have called her on Monday evenings prior to 9:00 p. m., at which time he is in his office, but defendant denies that he ever called the plaintiff late in the evening or that he has ever contacted the plaintiff in any way other than for business reasons in the collection of the above account.

"Further answering, defendant denies all other allegations contained in said amended petition."

The defendant Mary C. Peth filed a general denial.

A temporary restraining order was issued as prayed for. Trial on the merits resulted in a general verdict for the plaintiff and against the defendant Mark A. Peth. A general verdict was rendered in favor of the defendant Mary C. Peth. No interrogatories were submitted. It cannot be determined what amount, if any, was allowed for punitive as distinguished from substantial or compensatory damages.

The defendant Mark A. Peth, the appellant herein, filed a motion for judgment notwithstanding the verdict. The record shows that the verdict was returned on December 1, 1954. The motion for judgment notwithstanding the verdict was filed on December 3, 1954. The motion was overruled December 16, 1954. Judgment on the verdict was entered on December 16, 1954. Thus, it appears that the motion was prematurely filed and had no legal effect. Section 2323.18, Revised Code, provides for the rendering of a judgment notwithstanding the verdict in a proper case "upon motion of such party, filed as provided in Section 2323.181 of the Revised Code." In designating the section as 2323.181 an obvious error was committed in the enrolled bill. The section is correctly designated as Section 2323.18.1, Revised Code. This section in part provides:

"The motion provided for in Section 2323.18 of the Revised Code * * * shall be filed * * * within ten days after the journal entry of judgment in conformity to the verdict shall have been approved by the court in writing and filed with the clerk for journalization."

The later section also specifically provides that it shall apply to pending actions. This section became effective on October 27, 1953. Under the former sections of the Code, such motion was filed after the verdict and before judgment. Under the present section, the motion may not be filed until after judgment is entered on the verdict. The motion, being prematurely filed, had no legal effect. No motion for new trial was filed.

While we are of the opinion that the motion for judgment notwithstanding the verdict, being prematurely filed, raises no

question for the reviewing court, nevertheless, the questions raised are otherwise evidenced by the record.

The three errors assigned are: First, error in giving special instructions, and in the general charge; second, error in overruling motion for judgment notwithstanding the verdict; and, third, the judgment is not sustained by sufficient evidence and is contrary to law. We are not required to consider assignment of error No. 2.

In a civil action the reviewing court is required to consider the weight and sufficiency of the evidence, if error is predicated thereon, even though no motion for new trial has been filed. Section 2321.01, Revised Code, in part provides:

"A motion for a new trial is not necessary as a prerequisite to obtain appellate review of the sufficiency or weight of the evidence submitted to the trial court where such evidence to be considered appears as a part of the record filed in the appellate court."

A complete bill of exceptions has been filed, which exemplifies the claimed errors relative to the charges, the sufficiency of the evidence and whether the judgment is contrary to law.

Counsel for appellant have not briefed the several assignments of error separately, but have treated them as one; we do likewise.

Without reviewing the evidence in detail, which we deem unnecessary, it is sufficient to state that the evidence presented by the plaintiff in the main supported the allegations in the amended petition. The evidence presented by the defendants supported the allegations in the answer of the appellant. The appellant made certain admissions which supported, in part, the claims of the plaintiff. On the basis of the weight and sufficiency of the evidence, the verdict and judgment could be supported. However, the question presented is whether the evidence, when construed most favorably to the plaintiff, shows a right of action for the invasion of plaintiff's "right of privacy."

What is meant by "right of privacy?" If there exists in Ohio a right of action for damages for the invasion of the right of privacy, what acts constitute a violation of such right? Plaintiff contends that the right of action exists in Ohio, and

that the evidence was sufficient to support the verdict and judgment. This was the view of the trial court. The appellant contends that if a right of action exists in Ohio, which he doubts, the evidence falls far short of showing a violation which would form the basis for an award of damages.

The instant case presents a case of first impression in Ohio. The only reported cases in Ohio do not touch the question presented here, but the rulings and the opinions of the judges in the Ohio cases are worthy of notice. In 1938, in *Martin* v. *F. I. Y. Theatre Co.*, 26 Ohio Law Abs., 67, the Common Pleas Court of Cuyahoga County held:

"An actress on the legitimate stage who has acquired a reputation for integrity of character, morals, ability and talent in her profession is estopped by her very vocation from complaining that her personal right of privacy has been invaded by the exhibition of an enlarged photograph of herself among so-called 'nude' pictures of burlesque actresses on a burlesque theatre.

"The right of privacy is not a property right, but rather an incident personal in its nature, which does not exist as to any public character or in the dissemination of news."

In that case the question was presented on demurrer to the petition. On page 68, the court said:

"The best authorities are in accord, that if the act complained of is without justification, and for selfish gain and purposes, and of such a character as is reasonably calculated to wound the feelings, preventive relief in equity should follow. In some jurisdictions relief is granted only where some property right has been invaded or some pecuniary loss suffered. These courts adopt the theory that the right of privacy is a property right. 32 Ohio Jurisprudence, page 198."

On page 69, the court, indulging in obiter dictum, concluded:

"It cannot be violated under any circumstances by the spoken word."

In 1940, in *Johnson* v. *Scripps Publishing Co.*, 32 Ohio Law Abs., 423, the Common Pleas Court of Cuyahoga County held:

"It is not within the jurisdiction of a court of equity to

grant injunctive relief restraining a newspaper from continuing the publication of lists of names and addresses of signers upon nominating petitions of candidates of the Communist Party.

"The right of privacy does not prohibit publication of matter which is of public or general interest."

The question in that case was presented on demurrer to the petition. The court discussed at length the right of freedom of the press and the public character of a nominating petition, and, on page 431, said:

"The origin of the doctrine of the right of privacy is quite generally ascribed to an article of Louis D. Brandeis and Samuel D. Warren, published in 4 Harvard Law Review, page 193 (1890) entitled 'The Right of Privacy.'

"The right of privacy is variously defined as:

" 'A right of the individual to be let alone or to live a life of seclusion or to be free from unwarranted publicity, or to live without unwarranted interference by the public about matters with which the public is not necessarily concerned.' 54 Corpus Juris, 816, and

" 'The right of privacy is a right to be let alone to go one's way without being in the public eye, to be free from intrusion into one's private business and from unauthorized publicity concerning one's personal and private affairs. The right, where it has been recognized by the courts at all is based either upon a statute or upon judicial interpretation and inference from existing legal doctrines.' Jones Law of Journalism, page 205.

" 'The right of privacy is the right to be let alone; the right of a person to be free from unwarranted publicity. A more specific but less accurate definition is the right to live without having one's name, picture or statue, * * * made public against his will. The law respecting this right is purely modern. No mention of it is to be found in Blackstone, Kent or any of the great commentators of the law.' 21 R. C. L., 1196."

In 1941, in *Friedman* v. *Restaurant Employes,* 20 Ohio Opinions, 473, the Common Pleas Court of Hamilton County held:

"Where picketing is unlawful, the taking of moving pic-

ture photographs of customers entering and leaving the place of business of an employer will be enjoined.

"While persons, occupying prominent positions in public life and government, impliedly grant the right to take and publish their pictures, nevertheless, private individuals who do not give such consent, either expressly or tacitly, have the right to insist upon privacy."

On page 476, the court, in discussing a question as to the right of privacy, said:

"As to the taking of pictures by the moving picture camera, defendants rely upon *Robertson* v. *Rochester Folding Box Co.*, 171 N. Y., 538, which has declared that there is no right of privacy either under the common law or principles of equity. That decision was concurred in by four judges, an elaborate dissenting opinion being filed on behalf of the three other judges of that court. We prefer to adopt the principle announced in the dissenting opinion, especially in view of the discussion of the right of privacy being maintained by former Supreme Court Justice Brandeis while he was a member of the Bar, in an article written by him and his law partner, Samuel Warren, in 4 Harvard Law Review, 193, etc., and we agree with their conclusions rather than the contrary set forth in an article in 3 N. W. Review, page 1. One must concede that persons occupying prominent positions in public life and government impliedly grant the right to publish their pictures. Private individuals likewise may do so, either expressly or by tacit consent, but an ordinary individual, in our opinion and according to what we believe to be the better principle, has a right to insist upon his privacy. It is not surprising to find at times an opinion like that of the majority in the *Robertson case,* because in some courts and in some states there is an adherence to declarations and conclusions set forth in the year books or the black letter reports, rather than to meeting the changed conditions of our advanced civilization."

In 1953, in *Schmukler* v. *Ohio-Bell Telephone Co.,* 66 Ohio Law Abs., 213, 116 N. E. (2d), 819, the Common Pleas Court of Cuyahoga County held that the monitoring by the telephone company of a nonbusiness telephone service, to ascertain whether business calls were being made over such telephone,

by the subscriber, did not constitute a violation of plaintiff's right of privacy. The court directed a verdict in favor of the defendant. In overruling the motion for new trial, the court in its opinion, on page 218, said:

"This leads us to the question at issue, was plaintiff's right of privacy invaded, as she claims, and if so, under the facts is her case one that should have been submitted to the jury for its consideration.

"We must first inquire as to what we mean by the right of privacy or the right to privacy, since it is not even mentioned by any of the old commentators of the law.

"It is usually defined as 'the right of the individual to be let alone or to lead a life of seclusion, or to be free from unwarranted publicity, or to live without unwarranted interference by the public about matters with which the public is not necessarily concerned.' It was given prominence by an article written by Brandeis and Warren in the 4th Harvard Law Review of December 15, 1890. The article is an instance of fine legal writing, exhaustive and interesting. Brandeis later became a Justice of the Supreme Court of the United States and was a man of wide vision, sound principles and of great learning. Its conclusion is 'that the protection afforded to thoughts, sentiments, and emotions expressed through the medium of writing or of the arts so far as it consists in preventing publication is merely an instance of the enforcement of the more general right of the individual to be let alone. * * * and the principle which protects personal writings and all other personal productions not against theft and physical appropriation but against publication in any form is in reality not the principle of private property but that of an individual personality.' "

On page 220 the court said:

"But in every case involving an assertion of the right of privacy, the court is called upon to resolve the conflict between the rights of the individual on the one hand and the interest of society on the other. 138 A. L. R., 45."

In 32 Ohio Jurisprudence, 197, Section 1 *et seq.*, there appears a three-page treatise on the subject of "Right of Privacy." No Ohio cases are cited; all references are to Ruling Case Law. We quote pertinent parts from the text as follows:

On page 197:

"The right of privacy is the right to be let alone, the right of a person to be free from unwarranted publicity. * * * The right in question is incident to the person, and not to property. Its foundation is in the conception of an inviolate personality and personal immunity. It is considered as a natural and an absolute or pure right springing from the instincts of nature. It is of that class of rights which every human being had in his natural state, and which he did not surrender by becoming a member of organized society. The fundamental rights of personal security and personal liberty include the right of privacy, which is merely the right to live as one chooses."

On page 198:

"Upon the question as to whether the right of privacy is a legal right, for the violation of which there is a legal remedy, the courts are not in harmony. The majority have refused to recognize interference with one's privacy as an injury in the legal sense, on the ground that the law has not provided for a right to possess or maintain without disturbance any particular condition of feeling, and that to enforce such a right at this time would do violence to settled principles by which the public has long been guided. In other jurisdictions, the right of privacy has been recognized and enforced. Where such is the case, the violation of the right is a tort and the injured person is entitled to recover damages. The interference with another's seclusion is a direct injury, and, consequently, the law presumes that the injured person has been damaged. But the plaintiff is not limited to the recovery of nominal damages. He is entitled to recover substantial damages, although the only damages suffered by him result from mental anguish. The fact that these damages cannot be measured by a pecuniary standard is not a bar to his recovery."

On page 199:

"A violation of the right of privacy consists in the interference with another's seclusion by subjecting him to unwarranted and undesired publicity. The phrase 'unwarranted publicity' is difficult of accurate and concise definition, and its meaning is best illustrated by examples."

While the courts in the cited Ohio cases proceeded on the

assumption that under certain circumstances an action for the violation of the right of privacy exists in Ohio, no Ohio court has had to meet that question squarely. To what extent the action for the invasion of the right of privacy has found its place in Ohio jurisprudence has not been established.

The appellant contends, first, that the action involved here was a private, personal transaction, and not public; and, second, that it involved only the spoken word, and not a written communication or statement. The point is made that the right of action, in jurisdictions where it exists, does not extend to private transactions or the spoken word. In support of this proposition, appellant cites the Ohio cases. With the sole exception of the dictum in the *Martin case*, the Ohio cases do not support appellant's contention. Appellant cites cases from other jurisdictions, among which is an early leading case denying the right of action, *Robertson, an Infant,* v. *Rochester Folding Box Co.* (1902), 171 N. Y., 538, 64 N. E., 442, 59 L. R. A., 478, 89 Am. St. Rep., 828 (use of photograph of plaintiff in advertisement). Similar holdings are found in *Henry* v. *Cherry & Webb* (1909), 30 R. I., 13, 73 A., 97, 24 L. R. A. (N. S.), 991, 136 Am. St. Rep., 928 (plaintiff's photograph used in advertisement); *Themo* v. *New England Newspaper Publishing Co.* (1940), 306 Mass., 54, 27 N. E. (2d), 753 (photograph in newspaper); *McGovern* v. *Van Riper* (1947), 140 N. J. Eq., 341, 54 A. (2d), 469 (use of fingerprints and photograph of accused by police); and *Hansson* v. *Harris* (Tex. Civ. App., 1952), 252 S. W. (2d), 600 (use of fingerprints and photograph of accused by police).

Annotations on the subject are found in 106 A. L. R., 1453; 138 A. L. R., 22; 168 A. L. R., 446; and 14 A. L. R. (2d), 750. Cases too numerous to review are cited in A. L. R. supporting a right of action for damages for the invasion of the right of privacy. While it is true that the typical case usually involves the display, sale or publication of a person's portrait, or the public use of a person's name, without such person's consent, the right is by no means limited to such matters. The right covers a wide range of human activities. An invasion of the right of privacy may result without the matter being brought to the attention of the general public. Typical of this class of

cases are wiretapping and other forms of eavesdropping. In such cases, the public is not informed and not involved.

In recent years all reference works cite the majority view as favoring a right of action.

In 168 A. L. R., 448, published in 1947, it is stated that since 138 A. L. R. which was published in 1942, three states (Arizona, Florida and Indiana) had adopted the majority view. From 1947 to 1950, the date of publication of 14 A. L. R. (2d), Alabama and Michigan joined the majority. No additional jurisdiction has committed itself to the contrary view. In 138 A. L. R. there is an extended annotation in which various aspects of the question are discussed. On page 25 the authority states:

"The following is offered, by the present writer, as a fairly comprehensive definition of what constitutes an actionable invasion of the right of privacy:—The unwarranted appropriation or exploitation of one's personality, the publicizing of one's private affairs with which the public has no legitimate concern, *or the wrongful intrusion into one's private activities, in such manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities.*" (Emphasis ours.)

In this work, numerous cases from various jurisdictions are cited sustaining the majority view. On page 29, the author, in commenting on the opinion of the court in *Hinish* v. *Meier & Frank Co.* (1941), 166 Ore., 482, 113 P. (2d), 438, 138 A. L. R., 1, states:

"The court stated that it was called upon to exercise its 'sovereign prerogative of choice' between the view that the courts, for want of precedent, are impotent to grant redress for injury resulting from conduct universally condemned as indecent and outrageous by public opinion in civilized society, and the view that the common law, with its capacity for growth and expansion, its adaptability to the needs and requirements of changing conditions, and its ability to discover and apply remedies for acknowledged wrongs without waiting for legislation, contains within itself the resources of principle upon which to base relief in cases involving invasion of the right of privacy, and concluded that natural justice and the needs of

society should prevail over objections based upon the novelty of the asserted cause of action and the fear of a charge of judicial legislation, and should influence the courts to abandon fiction and frankly affirm the real character of the injury and the independent existence of a legal right of privacy.''

We believe the Ohio courts should adopt this line of reasoning and fall in line with the weight of authority.

In 4 Restatement of the Law of Torts, 400, Section 867, comment *d*, the standard by which the right is measured is stated as follows:

''* * * liability exists only if the defendant's conduct was such that he should have realized that it would be offensive to persons of ordinary sensibilities.''

''It is only when the defendant should know that the plaintiff would be justified in feeling seriously hurt by the conduct that a cause of action exists. If these conditions exist, however, the fact that the plaintiff suffered neither pecuniary loss nor physical harm is unimportant. The damages whether nominal, compensatory or punitive can be awarded in the same way in which general damages are given for defamation.''

See, also, 41 American Jurisprudence, 934, Section 12; *Reed* v. *Real Detective Pub. Co.* (1945), 63 Ariz., 294, 162 P. (2d), 133. Truth, while a defense to an action of libel, is not a defense to an action for invasion of the right of privacy. *Brents* v. *Morgan* (1927), 221 Ky., 765, 299 S. W., 967, 55 A. L. R., 964; *Themo* v. *New England Publishing Co., supra*; 168 A. L. R., 452. It is not essential to a recovery to allege and prove special damages. 138 A. L. R., 48; 168 A. L. R., 465. If the proof discloses a wrongful invasion of this right, substantial damages for injured feelings and mental anguish alone may be recovered. Punitive damages may be recovered where the element of malice appears. 138 A. L. R., 106.

Touching on the particular factual development in the instant case, the case of *LaSalle Extension University* v. *Fogarty* (1934), 126 Neb., 457, 253 N. W., 424, 91 A. L. R., 1491, may be cited. There repeated and unreasonable threats to sue and to appeal to the plaintiff's employer, made willfully and intentionally for the purpose of producing mental pain and anguish, in attempting to collect a debt, after the plaintiff had notified

the defendant that he did not owe the alleged debt, were held to entitle the plaintiff to the recovery of damages for mental pain and anguish, although he suffered no physical injuries. In *Barnett* v. *Collection Service Co.* (1932), 214 Iowa, 1303, 242 N. W., 25, the syllabus reads:

"Willful threats made to a debtor for the purpose of producing in the mind of the debtor such mental pain, anguish, and harassment as will induce him to pay the debt, render the offender liable in damages for the resulting pain and anguish, even tho there be no actual or threatened physical injury, provided the threats are not mere threats to resort to legal procedure."

We recognize that a creditor has a right to take reasonable action to pursue his debtor and persuade payment, although the steps taken may result to a certain degree in the invasion of the debtor's right of privacy. Simply informing the debtor's employer of the fact that the debt is owed, of itself, would not constitute an invasion of the right. *Patton* v. *Jacobs* (1948), 118 Ind. App., 358, 78 N. E. (2d), 789; *Lewis* v. *Physicians & Dentists Credit Bureau, Inc.* (1947), 27 Wash. (2d), 267, 177 P. (2d), 896.

However, the factual situation developed in the instant case is entirely different. The record shows that the defendant deliberately initiated a systematic campaign of harassment of the plaintiff, not only in numerous telephone calls to the plaintiff herself every day for a period of three weeks, some of which were late at night, but also calls to her superiors over the telephone, informing them of the debt; that she was called out of the classroom in the public schools where she was employed three times within 15 minutes; that she lost a roomer at her roominghouse because of the repeated calls, and was threatened with loss of employment unless the telephone calls ceased. The calls to the employer, and the roominghouse, were all part of the pattern to harass and humiliate the plaintiff and cause her mental pain and anguish and cause her emotional disturbance for the purpose of coercing her to pay the debt. The jury had a right to conclude that the defendant committed such acts maliciously. As a result of the conduct of the defendant the plaintiff became ill. In our opinion the conduct of the

defendant falls outside the bounds of reasonable methods which may be pursued in an effort to collect a debt, and is actionable as an invasion of plaintiff's right of privacy.

Special damages have been shown which meet the requirement of that line of cases which holds that when the invasion of the right of privacy is caused by an oral communication, special damages must be shown. 41 American Jurisprudence, 934, 940, Sections 11, 20.

In light of the principles applicable in such cases, as stated above, and the evidence presented, did the court commit prejudicial error in giving three special instructions requested by the plaintiff, to which defendant objected? They are as follows:

Special charge No. 1:

"The court charges the jury that this plaintiff has a right of privacy and that the unwarranted invasion of such right, if you find from the evidence her right was invaded by either of the defendants, or both of them, will entitle her to a verdict against such defendant or both of them as invaded her right of privacy, and I charge you that as a matter of law the plaintiff's right of privacy and to personal security includes the right to be let alone, and that she has the right to order her own life and manage her own affairs in a manner that may be most agreeable to her so long as the exercise of that right does not violate the rights of others.

"The invasion of the right of privacy may be defined also as the wrongful intrusion into one's private activities in such manner as to outrage or to cause mental suffering, shame or humiliation to a person of ordinary sensibilities. A person may, therefore, adopt a life of seclusion with a right to remain undisturbed if she so desires.

"Therefore, if you find from the evidence that the conduct of either of the defendants, or both of them, was such as to outrage or to cause mental suffering, shame or humiliation to a person of ordinary sensibilities, it will be your duty to return a verdict for the plaintiff and against such offending defendant or defendants.

"If you find from the evidence that either of the defendants or both of them, threatened to sue the plaintiff and threatened

to appeal, or did appeal, to her employer willfully or intentionally for the purpose of producing mental pain and anguish in attempting to collect a debt, or by such coercion collect such debt, it will be your duty to return a verdict for the plaintiff against such offending defendant or both of them as the case may be."

Special charge No. 2:

"I charge you that malice in law is the disposition to injure another without cause from a spirit of revenge and may be defined as a wrongful act done intentionally without just cause or excuse, or the willful doing of an injurious act without lawful excuse or purposely doing a wrongful act without a justifiable excuse, and after consideration of all the evidence in this case, if you find the acts complained of in the plaintiff's amended petition were maliciously done by one of the defendants, or both of them, as I have defined malice, you may go beyond the rule of compensatory damages and award exemplary or punitive damages; that is such damages as would compensate her for the wrong done and to punish the offending defendant or defendants, as the case may be.

"In the event you find the plaintiff is entitled to punitive or exemplary damages, you may also allow the plaintiff reasonable attorney fees for her counsel."

Special charge No. 3:

"I charge you that where the right of privacy is invaded, the person injured is entitled to recover substantial damages although the only damages suffered by her result from mental anguish, and by substantial damages I mean damages of real worth and importance, of considerable value as opposed to nominal damages which are assessed to satisfy a bare legal right."

In our opinion the special charges were properly given, as they correctly set forth the applicable principles of law to the factual issues developed in this case.

In the general charge, the court's instruction on the law was substantially the same as in the special charges. With respect to appellant's claim that error existed in the general charge, it is observed that only a general exception was taken by the appellant, at the close of the charge. If the general

charge was faulty, it was an error of omission and not of commission, and a general exception would not be sufficient on which to predicate error. We find no error in the general charge with respect to substantial and punitive damages.

We appreciate that the law with respect to a right of action for the invasion of the right of privacy is in the stage of development, and especially is this true in the state of Ohio. In sustaining the judgment, we concede we are not free from doubt. However, in our opinion, Ohio should definitely fall in line with the weight of authority on this legal proposition.

The judgment is sustained by sufficient evidence and is not contrary to law.

We find no error in the record prejudicial to the rights of the appellant. The judgment is affirmed.

*Judgment affirmed.*

MILLER, P. J., and HORNBECK, J., concur.