132 So.2d 321

**Nealus E. NORRIS**

v.

**MOSKIN STORES, INC. et al.**

6 Div. 612.

Supreme Court of Alabama.

April 6, 1961.

Rehearing Denied May 18, 1961.

Jenkins & Cole, Birmingham, for appellant.

Sirote, Permutt, Friend & Friedman, Birmingham, for appellees.

STAKELY, Justice.

Nealus E. Norris (appellant) brought an action for damages against Moskin Stores, Inc. and Morris Nathan (appellees). Counts 1 and 3 of the complaint, as amended, seek damages for invasion of plaintiff's privacy. Count 4 of the amended complaint avers "an intentional interference" by defendants with plaintiff's "marital contract and marital relations." Count 2, which set forth a cause of action for slander, was stricken and is not involved on this appeal. The defendants separately and severally demurred to the complaint as amended and separately and severally to each count thereof. The trial court sustained the demurrers and, on motion of plaintiff, granted a nonsuit. From this order plaintiff has appealed, assigning as error the ruling of the trial court on the demurrers.

The gist of plaintiff-appellant's cause for invasion of privacy is contained in the allegations of Count 3, which are as follows:

"* * * defendants were operating a commercial and mercantile business in the City of Birmingham, attempting to collect money allegedly owed by plaintiff to Moskin Stores, Inc. Plaintiff avers that an agent, servant, or employee of the defendants, while acting within the line and scope of her employment as such agent, servant, or employee in the course of said commercial and mercantile business, in attempting to collect money allegedly owed by plaintiff, by the use of the telephone, called plaintiff's wife on two occasions at the place where she was employed and stated, in substance, that the person calling was 'Doris,' that she had met the plaintiff in Indiana, that she had dated him, that she had to get in touch with plaintiff on a matter of importance, that said Doris wanted to meet with plaintiff alone and without plaintiff's wife being present, and said agent, servant, or employee as aforesaid left a telephone number, which number plaintiff was to call; plaintiff further avers that on the same date, an agent, servant, or employee of the defendants, while acting within the

**176**

line and scope of her employment as such agent, servant, or employee, in the course of said commercial and mercantile business, in attempting to collect money allegedly owed by plaintiff, called plaintiff's sister-in-law inquiring as to plaintiff's whereabouts and his place of employment, that she (Doris) was 'in trouble' and had to get in touch with plaintiff, inquiring as to whether plaintiff was married, and upon being advised in the affirmative she stated that 'he (meaning the plaintiff) told me he wasn't married'; that said person, in the course of the aforesaid telephone conversations, and in an effort to locate plaintiff's employment, led persons to whom she was speaking into believing that plaintiff had engaged, or was engaging, in activities contrary to the recognized conventions of his marital status.

"Plaintiff avers that the aforesaid inquiries and statements made over the telephone by an agent, servant, or employee of the defendants, while acting within the line and scope of her employment as such agent, servant, or employee, in the cause of said commercial and mercantile business, in attempting to collect money allegedly owed by plaintiff as aforesaid; violated plaintiff's right of privacy, and as a proximate consequence thereof plaintiff suffered the following injuries and damages; he was humiliated and embarrassed; his marital relations and homelife were disrupted; his wife parted from him for a short time; he was caused to suffer mental anguish; and his character and reputation were damaged and injured, for all of which plaintiff claims damages."

The State of Alabama is among those states which recognize that a man has a right of privacy the violation of which may be actionable. Smith v. Doss, 251 Ala. 250, 37 So.2d 118. The particular application of the principles of the right of privacy which these appellants seek to make is, however, as yet novel to this jurisdiction. The earlier cases decided by this court have concerned situations in which it was claimed that the defendant had given unwarranted and intrusive publicity to the private affairs of the plaintiff, Smith v. Doss, supra, and Abernathy v. Thornton, 263 Ala. 496, 83 So.2d 235, or had made unauthorized use of plaintiff's name for commercial purposes. Birmingham Broadcasting Co. v. Bell, 259 Ala. 656, 68 So.2d 314; 263 Ala. 355, 82 So.2d 345. But nothing in the foregoing cases shows that the action for invasion of privacy is necessarily limited to those situations alone. For example, a cause of action for invasion of privacy has been held to lie for unwarranted intrusion by means of a listening device (McDaniel v. Atlanta Coca-Cola Bottling Co., 60 Ga.App. 92, 2 S.E. 2d 810, 811; Roach v. Harper, W.Va., 105 S.E.2d 564), for persistent shadowing (Schultz v. Frankfort Marine, Acci. & P. G. Ins. Co., 151 Wis. 537, 139 N.W. 386, 43 L.R.A.,N.S., 520), and for a shop manager's angrily and roughly accosting a female customer and searching her coat and purse (Bennett v. Norban, 396 Pa. 94, 151 A.2d 476, 71 A.L.R.2d 803).

It is suggested in Prosser, Law of Torts 637–39 (2nd ed. 1955), that the invasion of privacy tort consists in fact of four distinct wrongs, (1) "the intrusion upon the plaintiff's physical solitude or seclusion," (2) "publicity which violates the ordinary decencies," (3) "putting the plaintiff in a false but not necessarily defamatory position in the public eye," and (4) "the appropriation of some element of the plaintiff's personality for a commercial use." We think this analysis fundamentally consistent with our statement in the Doss case and reaffirmed in the Abernathy case, adopted from 41 Am.Jur. 925, that the right of privacy is " 'the right of a person to be free from unwarranted publicity,' or 'the unwarranted appropriation or exploitation of one's personality, the publicizing of one's private affairs with which the public has no legitimate concern, or

*the wrongful intrusion into one's private activities in such manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities.'"* [Emphasis added.]

We think that there may be circumstances under which the actions of a creditor in regard to his debtor fall within Dean Prosser's first category of actionable wrong, or, in the words of the Doss case, constitute an outrageous "wrongful intrusion."

■ The mere efforts of a creditor, in this case the appellees, to collect a debt cannot without more be considered a wrongful and actionable intrusion. A creditor has and must have the right to take reasonable action to pursue his debtor and collect his debt. But the right to pursue the debtor is not a license to outrage the debtor. The problem of defining the scope of the right of privacy in the debtor-creditor situation is the problem of balancing the interest of the creditor in collecting his debt against that of the debtor in his own personality. Some courts appear to have struck that balance on the so-called "rule of reason." Thus in the recent case of Housh v. Peth, 99 Ohio App. 485, 135 N.E.2d 440, 449, affirmed 165 Ohio St. 35, 133 N.E.2d 340, the Ohio appellate courts asserted that "a creditor has a right to take reasonable action to pursue his debtor and pursuade payment, although the steps taken may result to a certain degree in the invasion of the debtor's right of privacy," but that the debtor has a cause of action for injurious conduct on the part of the creditor which exceeds the bounds of reasonableness. We approve this statement.

The phrase "reasonable action" is of course not one for which exact legal definition can be prescribed. What constitutes "reasonable" action must depend largely on the facts of the particular case. In Housh v. Peth, supra, the creditor-defendant "deliberately initiated a systematic campaign of harassment of the plaintiff, not only in numerous telephone calls to the plaintiff herself every day for a period of three weeks, some of which were late at night, but also calls to her superiors over the telephone, informing them of the debt * * *." Plaintiff "was called out of the classroom in the public schools where she was employed three times within 15 minutes; * * * she lost a roomer at her rooming house because of the repeated calls, and was threatened with loss of employment unless the telephone calls ceased." Housh v. Peth, 135 N.E.2d 440, 449.

The Housh decision is supported by Barnett v. Collection Service, 214 Iowa 1303, 242 N.W. 25, and LaSalle Extension University v. Fogarty, 126 Neb. 457, 253 N.W. 424, 91 A.L.R. 1491. These cases involved harassment of the plaintiff-debtor by the defendant-creditor by means of coarse, inflammatory, threatening, or malicious letters producing mental pain and anguish on the part of the plaintiff, which the Iowa and Nebraska courts held actionable. These cases have in common with the Housh case the element of intentional "systematic campaign of harassment." See also, Brents v. Morgan, 221 Ky. 765, 299 S.W. 967, 55 A.L.R. 964; Clark v. Associated Retail Credit Men of Washington, D. C., 70 App.D.C. 183, 105 F.2d 62; Quina v. Robert's et al., La.App., 16 So.2d 558; Western Quaranty Loan Co. v. Dean, Tex.Civ.App., 309 S.W.2d 857.

On the other hand, the case of Gouldman-Taber Pontiac Inc. v. Zerbst, 213 Ga. 682, 100 S.E.2d 881, consistent with dictum in Housh, and we think correctly, held that a single letter written by the defendant-creditor to the plaintiff-debtor's employer merely notifying him of the debt did not constitute an actionable invasion of plaintiff's privacy.

"The right of privacy is not absolute but is qualified by the rights of others. * * * A recluse who completely extricated himself from society might well expect no interference whatever from the outside world. But one who, like the plaintiff, is employed

by a large corporation, who is an active participant in the business world, who has an automobile and drives it upon the highways, has it serviced and repaired, and obtains credit for goods and services used in repairing her car, may expect reasonable conduct on the part of those with whom she does business and from whom she gets credit. * * * When she accepts the credit, she impliedly consents for her creditor to take all reasonable and necessary action to collect the bill. Writing to her employer, as this creditor did, was in our opinion a reasonable exercise of his rights and constituted no unwarranted or unreasonable interference with her right of privacy." Gouldman-Taber Pontiac v. Zerbst, 100 S.E.2d 881, 883.

Following the Zerbst case, the recent case of Tollefson v. Safeway Stores, Colo., 351 P.2d 274, 276, concerned the activities of a defendant bill collector who informed plaintiff's wife that if the debt, on a dishonored check, were not paid, plaintiff's job would be in jeopardy, and who contacted plaintiff's superiors, seeking to bring pressure on plaintiff to pay. The Colorado court held that on these facts plaintiff had no cause of action for invasion of privacy, pointing out that "there was no campaign of continuous harassment, no attempt to vilify or expose plaintiff to public ridicule, and no effort to cause plaintiff to lose his position * * *." "It is not an invasion of privacy," according to that court, "to remind one of his obligations be they legal or moral."

Similarly, relief was denied in Patton v. Jacobs, 118 Ind.App. 358, 78 N.E.2d 789 (two letters to employer concerning the debt); Lewis v. Physicians and Dentists Credit Bureau, Wash., 177 P.2d 896 (single telephone call to wife's employer advising of unpaid bill and of intent to start garnishment proceedings).

▮ In the case at bar, assuming as we must that the allegations of the complaint are true, it may be difficult to construe the three telephone calls, compared for example with the numerous calls in the Housh case, supra, as a "systematic campaign" of harassment. Furthermore, the calls in the instant case were made to members of appellant's family, so that there may be here lacking part of the element of humiliating publicity present in some of the cases. On the other hand, according to the pleadings, it does not appear that the caller suggested or attempted to urge payment, or indeed that any reference whatever was made to the existence of the alleged debt. If the allegations of the complaint are true, the alleged telephone calls were but a vicious attempt to coerce payment. This course of conduct cannot be justified as reasonably related to a legitimate effort to collect the debt. The defendants did not choose to put themselves in the position of creditor when they, through their agent, made these calls. They cannot seek to invoke that protection now. In view of the nature of these telephone conversations, which a jury could find outrageous and humiliating to a person of ordinary sensibilities, we must conclude that the complaint sets forth sufficient "harassment" and that the activities of the defendants fall beyond the realm of reasonable action and into the area of wrongful and actionable intrusion.

▮ Appellees contend, however, that there can be no actionable invasion of privacy for spoken, as opposed to written, words. Dicta to this effect appear in Brents v. Morgan, 221 Ky. 765, 299 S.W. 967, 55 A.L.R. 964; Cason v. Baskin, 155 Fla. 198, 20 So.2d 243, 168 A.L.R. 430, and Melvin v. Reid, 112 Cal.App. 285, 297 P. 91. We think this proposition is incorrect. To exclude actions for oral invasion of privacy would, for example, be to ignore the dangerous potential of the modern media of mass communication. Furthermore, our acceptance of this proposition would be inconsistent with, if not to overrule, our decision in the Doss case, supra, which involved the spoken word.

In the Abernathy case, supra, we quoted with general approval an extensive paragraph, outlining the general theory of the right to privacy, from Dean Hepburn's Cases on Torts, which contains the statement that "The right of privacy can only be violated by printings, writings, pictures, or other printed publications or reproductions, and not by word of mouth." Hepburn, Cases on Torts 504. But we consider that our concern in the Abernathy case was more with other aspects of the quoted paragraph, and particularly with the situation wherein one "becomes an actor in an occurrence of public or general interest." Certainly nothing in the Abernathy case turned on whether the allegedly objectionable words were written or not. Nor was there any attempt or intention in the Abernathy case to overrule the Doss case, supra. The Abernathy opinion cites Doss and rests in part on it. Abernathy cannot be taken as authority for the proposition here urged.

We note that the cases which contain language purporting to limit the action to written words or printings appear to base their position on the original article from which the action is generally conceded to originate. Warren and Brandeis, The Right to Privacy, 4 Harv.L.Rev. 193. The "Hepburn" statement is from one of those cases, Melvin v. Reid, supra.

We observe that the statement actually made by Warren and Brandeis is that "The Law would *probably* not grant any redress for the invasion of privacy by oral publication *in the absence of special damages.*" 4 Harv.L.Rev. 217 [Emphasis added.] While a requirement of special damages for oral invasion of privacy may have been occasionally suggested in later writings (see 41 Am.Jur. 950), we find no indication that it has received general acceptance. Indeed, in Smith v. Doss, supra [251 Ala. 250, 37 So.2d 120], we pointed out that unlike libel, "in actions for infringement of the right of privacy * * * it is never necessary to allege or prove special damages."

In Roach v. Harper, W.Va., 105 S.E.2d 564, the West Virginia court stated that

"Courts which have followed the doctrine of the existence of the right of action have had no difficulty in reaching the conclusion that an allegation of special damages is not necessary to the validity of the pleading. We think the conclusion logical. The invasion of the right, the tort committed, gives right to the action, the right to recover damages. 'Publication or commercialization may aggravate, but the individual's right to privacy is invaded and violated nevertheless in the original act of intrusion.' McDaniel v. Atlanta Coca-Cola Bottling Co., supra. Questions of special damages, of course, may arise so as to enhance recovery. Also, circumstances may arise which would mitigate the damages. * * * The same reasoning leads to the conclusion that a declaration in such an action, to be sufficient against demurrer, need not allege publication of information or results obtained through the invasion."—105 S. E.2d at page 568.

We note that Warren and Brandeis gave us their reason for the limitation, reasoning by way of analogy to the law of libel and slander, that "The injury resulting from such oral communications would ordinarily be so trifling that the law might well, in the interest of free speech, disregard it altogether." 4 Harv.L.Rev. at 217. The Warren-Brandeis article was published in 1890, long before the advent of the modern methods of mass communication to which we have already alluded. While it may have been possible seventy years ago to dismiss all oral communications as "trifling" in effect, such a conclusion would today be contrary to modern realities. Therefore, if we have not already done so in Smith v. Doss, supra, we must now reject the view, if such exists, that special damages must be shown where the invasion of privacy is by spoken words.

**180**

We conclude that the complaint states a good cause of action for invasion of privacy and that the demurrers to Counts 1 and 3 should have been overruled.

Count 4 of the complaint adopts the substantial allegations of fact contained in Count 3 and adds that

"as a proximate consequence of the intentional interference with plaintiff's marital contract and marital relations as aforesaid the plaintiff suffered the following injuries & damages; he was humiliated & embarrassed; his marital relations and home life were disrupted; his wife departed from him for a short time; he was caused to suffer mental anguish; & his character and reputation were damaged & injured, for all of which plaintiff claims damages."

Appellant has in brief characterized this count as setting forth "a cause of action for intentional interference with the plaintiff's marital contract and marital relations," and invokes an analogy to an action for intentional interference with one's trade, profession, or business, or with the performance of a contract. Assuming, however, that this count states a cause of action and that it is one different from that contained in the other counts, we think that the cause expressed is more accurately characterized as one for alienation of affection. Thus in Young v. Young, 236 Ala. 627, 630, 184 So. 187, 190, we pointed out that "Actions for alienation of affections * * * are * * * based upon the marriage relation—actions for the loss of consortium between the spouses from the wrongful acts of others. Alienation of affections is the robbing of husband or wife of the conjugal affection, society, fellowship and comfort which inheres in the normal marriage relation." The robbing of the marital incidents, the loss of consortium, is the essence of this count.

■■ While there may be some popular tendency to think of an action for alienation of affections in terms of an unfaithful wife, an outraged husband, and an overzealous lover, that conception is not the legal one. The triangular situation depicted may be a common one, in life and in law, but it is not essential to the cause. Unlike an action for criminal conversation, the essence of which is "the defilement of the marriage bed, sexual intercourse of an outsider with husband or wife, a breaking down of the covenant relation to 'keep thee only unto him or her so long as you both shall live,'" there is no requirement of an amorous relation between the defendant and the alienated spouse. Young v. Young, supra. Stated differently,

"The gist of the alienation of affections action is the intentional or purposeful alienation of affections of one spouse from the other; the damage, if any, in such a case is for the loss of consortium and not particularly the transfer of affection from one to another." Smith v. Smith, Tex.Civ. App., 225 S.W.2d 1001, 1005.

The injury is one to the marital relationship. Thus it is for example said that

"As any superficial examination of the cases will reveal, more actions of this kind have been brought against parents than anyone else, and the meddling mother-in-law is more frequently defendant than the wicked lover." Prosser, Law of Torts 686 (2nd ed. 1955.)

We note with interest that the Young case, supra, was precisely such an action.

■ Having determined that the cause of action, if any, stated in Count 4 is one for alienation of affections, we now come to the provisions of Title 7, § 115, Code of 1940, as follows: "There shall be no civil causes of action for alienation of affections. * * *." By this statute the legislature has abolished any cause of action the appellant may have had at common law. As to Count 4, then, the demurrers were properly sustained.

For the errors in sustaining the demurrers to Counts 1 and 3, the judgment of the lower court is reversed and the cause remanded.

Reversed and remanded.

LIVINGSTON, C. J., and LAWSON and MERRILL, JJ., concur.