**Kathleen Francis JONES, f/k/a Kathleen Francis Fritch, Plaintiff,**

v.

**U.S. CHILD SUPPORT RECOVERY, a Texas Corporation, and Zandra L. Perkins, Defendants.**

**Civil No.  2:94–CV–0124 B.**

United States District Court, D. Utah, Central Division.

March 27, 1997.

R. Steven Chambers, Salt Lake City, UT, for Plaintiff.

Stephen W. Cook, Salt Lake City, UT, for Defendants.

## MEMORANDUM DECISION AND ORDER

BENSON, District Judge.

This matter is before the court on defendants United States Child Support Recovery's and Zandra L. Perkins' (collectively "Defendants") motion for summary judgment on Plaintiff Kathleen Francis Jones' third, and only remaining, cause of action, invasion of privacy. On January 17, 1995 this court dismissed Plaintiff's first claim, under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692–1692o, holding that a child support obligation does not qualify as a "debt" under the FDCPA. On June 24, 1996 a hearing was held on Defendants' motion for summary judgment on Plaintiff's remaining claims. R. Steven Chambers represented Plaintiff and Stephen W. Cook represented Defendants. The court ruled that summary judgment would be entered as to Plaintiff's second cause of action alleging the tort of intentional infliction of emotional distress unless Plaintiff produced an affidavit from a medical professional stating material facts concerning damages and causation. Thereafter, Plaintiff indicated that she would be unable to produce such an affidavit. Accordingly on October 10, 1996 the court dismissed Plaintiff's claim for intentional infliction of emotional distress. On October 21, 1996 the court requested supplemental briefs addressing Plaintiff's claim for invasion of privacy. Now being fully advised, the court enters the following memorandum decision and order.

### Background

In 1993 Plaintiff and Clyde David Fritch divorced by a Decree of Divorce ("Decree") issued by the Superior Court of California. Under the Decree, Mr. Fritch was awarded primary physical custody of John Lawrence

Fritch, the natural son of Plaintiff and Mr. Fritch. Plaintiff was ordered to pay $468.00 per month in child support. A short time later, after the Plaintiff had missed approximately three payments, Mr. Fritch retained Defendants to collect the child support.

On November 17, 1993 Defendants wrote Plaintiff informing her that she was $1,285.00 in arrears and requesting payment.[1] In response, Plaintiff admitted her delinquency and asked Defendants for the opportunity to make payments on her child support debt. Defendants denied the request and demanded payment in full. A series of contacts and telephone calls ensued in the following weeks.

Plaintiff allegedly became very upset and emotionally distraught because of the words and tone of Defendants' proddings to pay the money. For example, in telephone messages left for Plaintiff, Defendants' statements included the following:

> Kathleen, what kind of mother are you? ... [A] real mother would bend over backward to see that the child was supported.... It, it just appalls me. .... How do you look at yourself in the mirror.... We work with literally thousands of people and I've never worked with a mother, and I use that term loosely, like you.... Very sad. You're a pitiful mother.
>
> ....
>
> Well, Kathleen, Christmas is here. Your son is still, uh, waiting for his child support. You're out, uh, spending it on who knows what. Definitely not him. I, uh, would think that that would spoil, uh, most real mother's Christmas, but, uh, I don't know that it bothers you too much.... Really a sad situation when we come across a, uh, mother like you, Kathleen.... Why don't you start acting like a mother and get your child support paid.

Mem. in Supp. of Def.'s Mot. For Summ. J., Ex. A, Tr. of Telephone Messages dated December 18, 1993 and December 24, 1993.

After repeated telephone messages and conversations failed to achieve the desired result, Defendants escalated their efforts by sending a "Wanted" poster to Plaintiff's employer, Silicon Systems; the Plaintiff's mother, Geraldine McQuaid; and the Plaintiff's siblings, Donna Prudence and Larry McQuaid. The poster referred to Plaintiff as a "Dead Beat Parent" with a "well-paying job" whose "own flesh and blood" "wishes his mother cared about him to send the child support which the court ordered her to contribute for his care." *Id.*, Ex. B.

### Discussion

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court must construe all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

Plaintiff's third cause of action alleges a claim for invasion of privacy, but fails to identify any specific tort. The court agrees with the parties that Plaintiff's claim potentially falls under the specific torts "intrusion upon seclusion" and "publicity given to private life." *See generally* Restatement (Second) of Torts §§ 652B & D.

As an initial matter, the court addresses the tort of publicity given to private life. The elements of this tort are 1) publicity; 2) disclosure of private facts (considered highly offensive to the reasonable person); 3) absence of waiver or privilege; 4) emotional distress and embarrassment or shame and humiliation; and 5) the disclosure is not a matter of legitimate public concern. Restatement (Second) of Torts § 652D. "Publicity," unlike the element of "publication" in a defamation case, requires that the information disclosed has or is substantially likely to become general knowledge to the public at large. *Kuhn v. Account Control Technology*, 865 F.Supp. 1443, 1448 (D.Nev.1994). *But see Borquez v. Ozer*, 923 P.2d 166, 174 (Colo. App.1995) (finding an exception to the gener-

---

1. The actual amount was $1,290.83 as of December 1, 1993.

al rule and holding that publicity element required only "publication" to a third party when there was a "special relationship" between the plaintiff and those to whom the information was divulged). Examples would include newspapers, magazines, handbills to a large number of people or a statement made to a large audience. Restatement (Second) of Torts § 652D cmt. a.

In this case, although the Defendants threatened to disseminate the Wanted poster to the public at large, in fact the poster was only delivered to Plaintiff's employer and a few close relatives. This distribution of private information to a handful of people is insufficient to meet the element of publicity required for this tort, *e.g., Kuhn,* 865 F.Supp. at 1448. The court grants Defendants' motion for summary judgment as to the claim of publicity given to private matters.

■ The tort of intrusion upon seclusion is slightly different than the tort of publicity given to private matters. "To establish an invasion of privacy claim of intrusion upon seclusion, a complaining party must prove by a preponderance of the evidence that an intentional substantial intrusion, physically or otherwise, upon the solitude or seclusion of the complaining party ... would be highly offensive to the reasonable person." *Turner v. General Adjustment Bureau. Inc.,* 832 P.2d 62, 67 (Utah.Ct.App.1992) (citing Restatement (Second) of Torts § 652B & cmt. d). The question in the instant case is whether the Defendants' actions substantially intruded upon Plaintiff's private life in a way that would be highly offensive to the reasonable person. The Restatement defines this tort as follows:

§ 652B. Intrusion upon Seclusion

One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.

Restatement (Second) of Torts § 652B. Comment a explains:

The form of invasion of privacy covered by this Section does not depend upon any publicity given to the person whose interest is invaded or to his affairs. It consists solely of an intentional interference with his interest in solitude or seclusion, either as to his person or as to his private affairs or concerns, of a kind that would be highly offensive to a reasonable man.

*Id.* cmt. a. Comment d states:

There is likewise no liability unless the interference with the plaintiff's seclusion is a substantial one, of a kind that would be highly offensive to the ordinary reasonable man, as the result of conduct to which the reasonable man would strongly object. Thus there is no liability for knocking at the plaintiff's door, or calling him to the telephone on one occasion or even two or three, to demand payment of a debt. It is only when the telephone calls are repeated with such persistence and frequency as to amount to a course of hounding the plaintiff, that becomes a substantial burden to his existence, that his privacy is invaded.

*Id.* cmt. d.

■ The court must view both the nature (quality) as well as the pattern (quantity) of the Defendants' actions. *Household Finance Corp. v. Bridge,* 252 Md. 531, 250 A.2d 878, 884 (1969) ("the communication, if not of such frequency as to constitute harassment, has been of such a nature as to possess a vicious quality"). In both *Trammell v. Citizens News Co., Inc.,* 285 Ky. 529, 148 S.W.2d 708 (1941), and *Norris v. Moskin Stores. Inc.,* 272 Ala. 174, 132 So.2d 321 (Ala.1961), the courts found that the nature (not the pattern) of the creditor's actions was so unreasonable, that a claim of invasion of privacy (i.e. intrusion upon seclusion) was warranted. At other times the court makes the same determination by looking at the overall pattern (not the nature) of the defendant's actions. *Household Finance,* 250 A.2d at 885; *Rugg v. McCarty,* 173 Colo. 170, 476 P.2d 753, 755 (1970); *see also Lewis v. Physicians and Dentists Credit Bureau. Inc.,* 27 Wash.2d 267, 177 P.2d 896, 899 (1947) ("A creditor or an assignee has a right to urge payment of a just debt, and to threaten to resort to proper legal procedure to enforce such payment."). *See generally* Restatement (Second) of Torts § 652B cmt. d. In cases of debt collection,

courts may also focus on plaintiff's behavior toward the debt collector. *See Munley v. ISC Financial House Inc.*, 584 P.2d 1336, 1340 (Okla.1978) (creditors are allowed more intrusive activity when a debtor refuses to communicate with them).

■ In the instant case, Plaintiff asserts that not only is the "Wanted" Poster by itself highly offensive to the reasonable person and substantially intrusive into her private life, but also that the overall actions and repeated phone calls of the Defendants were highly offensive as well. Because this case originates out of Defendants' efforts to collect a debt, the court finds the Supreme Court of Alabama's language applicable:

> The mere efforts of a creditor ... to collect a debt cannot without more be considered a wrongful and actionable intrusion. A creditor has and must have the right to take reasonable action to pursue his debtor and collect his debt. But the right to pursue the debtor is not a license to outrage the debtor.

*Norris,* 132 So.2d at 323 (three telephone calls suggesting an illicit relationship with the debtor to members of the debtor's family constituted actionable invasion of the debtor's right of privacy). In view of the content of these telephone calls, messages, and "Wanted" poster, the court holds that a jury could reasonably find that Defendants' actions invaded the solitude and private life of the Plaintiff in a manner that would be highly offensive to a reasonable person.

■ Defendants' vague assertion of a public record defense to Plaintiff's claim of intrusion upon seclusion is without merit. Defendants contend that because the child support order is a matter of public record, Plaintiff's subsequent delinquent payments are also part of the public record. They assume too much. All records kept by the state are not open to public inspection. In Utah, records of child support payments and delinquencies monitored by the State are recorded but not available for general public inspection. The Government Records Access and Management Act ("GRAMA") regulates the accessibility of public records. Utah Code Ann. §§ 63–2–101—63–2–909. A public record defense to a claim of intrusion upon seclusion is limited to records open to the general public, not just to any public record. In this case, any state record of Plaintiffs delinquent child support payments does not qualify as an open public record for two reasons. First, Defendant's have presented no evidence that the state actually keeps a record of Plaintiff's delinquent child support payments. Second, even assuming that these delinquent payments are recorded, the Utah GRAMA Act prohibits their disclosure to the general public. Utah Code Ann. § 63–2–302(2)(b).

■ The final issue is whether Plaintiff can maintain a cause of action for intrusion upon seclusion without alleging and proving special damages. Counsel submitted no cases from the Utah Supreme Court or Utah Court of Appeals specifically ruling whether proof of special damages are necessary to maintain an invasion of privacy cause of action and the court was likewise unable to find direct guidance on this issue. In general, however, courts appear to uniformly recognize that there is no specific standard for measuring damages of personal injury claims and that the jury is particularly well-suited for this type of case-by-case determination. *E.g., Gonzales v. Southwestern Bell Telephone Co.*, 555 S.W.2d 219, 223 (Tex.Civ.App. 1977); *Fairfield v. American Photocopy Equip. Co.*, 138 Cal.App.2d 82, 291 P.2d 194, 198 (1955). More specifically, the Utah Court of Appeals quoted with approval, "The fact that damages resulting from an invasion of the right of privacy cannot be measured by a pecuniary standard is not a bar to recovery." *Turner,* 832 P.2d at 67 n. 6 (quoting *Fairfield,* 291 P.2d at 198). *Turner* further noted that "[o]nce a party establishes a cause of action for invasion of privacy, that party recovers for mental distress damages proved, if such damages are the kind that normally result from such an invasion." ' *Id.* (quoting Restatement (Second) of Torts § 652H(b)); *see also Manville v. Borg–Warner Corporation,* 418 F.2d 434, 437 (10th Cir.1969) (holding that recovery in an invasion of privacy suit did not require proof of

special damages).[2] In light of the above cases, the Restatement, and general agreement among authorities that proof of special damages is not required for an invasion of privacy claim, the court concludes that Plaintiff's failure to allege special damages is not fatal to her invasion of privacy claim.

The Defendants essentially concede the court's conclusion by stating that "there is general agreement that the plaintiff need not plead or prove special damages." Suppl. Mem. Supp. Defs.' Mot. Summ. J. at 12 (citing William L. Prosser, *Privacy*, 48 Cal. L.Rev. 383, 409 (1960)). Defendants nevertheless contend that (1) Plaintiff should not be allowed to collect damages in her invasion of privacy claim without providing proof of damages as the court required in Plaintiff's intentional infliction of emotional distress claim; and (2) leaving a decision to the jury without proof of damages opens the door to an arbitrary award of damages. Neither contention is persuasive.

An intentional infliction of emotional distress claim requires a different standard of proof than an invasion of privacy claim. An intentional infliction of emotional distress claim requires evidence of "an actual and proximate causal link between the tortious conduct and the emotional distress." *White v. Blackburn*, 787 P.2d 1315, 1317 (Utah App. 1990). This is because the tort has not been committed unless emotional distress has in fact occurred. Conversely, an invasion of privacy tort occurs when a person's privacy is invaded in a manner that "would be highly offensive to the ordinary man," regardless of actual emotional distress. *Machleder v. Diaz*, 618 F.Supp. 1367, 1370-71 (D.C.N.Y., 1985), *aff'd in part. rev'd on other grounds*, 801 F.2d 46 (2d Cir.1986); *See Gonzales*, 555 S.W.2d at 221-222 ("Damages for mental suffering are recoverable without the necessity of showing actual physical injury in a case of willful invasion of the right of privacy.").

Second, there is a pragmatic reason for the differing standards between the two torts. Intentional infliction of emotional distress is designed to compensate individuals who suffer damages due to the intentional acts of another. The proof of actual damages is therefore necessary to establish that the infliction actually caused a cognizable injury. Invasion of privacy, on the other hand, is intended to prevent invasions into the private matters of individuals' lives. The Restatement states:

> a. A cause of action for invasion of privacy, in any of its four forms, entitles the plaintiff to recover damages for the harm to the particular element of his privacy that is invaded. Thus one who suffers an intrusion upon his solitude or seclusion, under § 652B, may recover damages for the deprivation of his seclusion....
>
> b. The plaintiff may also recover damages for emotional distress or personal humiliation that he proves to have been actually suffered by him, if it is of a kind that normally results from such an invasion and it is normal and reasonable in its extent....

Restatement (Second) of Torts § 652H cmt. a-b.

Based on the evidence presented, the court holds that (1) there are genuine issues of material fact to be considered by the jury in determining whether Defendants' actions were substantially intrusive and highly offensive; (2) Defendants are not entitled to a public record defense; and (3) Plaintiff can maintain a cause of action for intrusion upon seclusion without alleging and proving special damages.

## CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment is GRANTED as to Plaintiff's publicity given to private matters claim and DENIED as to Plaintiff's intrusion upon seclusion claim.

---

2. Although not directly applicable to this case, the Utah Criminal Code also gives the court some guidance as to Utah's approach to a requirement of special damages in an invasion of privacy tort. For claims of physical trespass, eavesdropping, and defamation, Utah courts do not require allegations or proof of actual damages to have the case go forward. Utah Code Ann. § 76-9-406 (1996).