The defendant, K-Mart Corporation ("K-Mart"), appeals from an adverse judgment based upon a jury verdict finding it liable for defaming and invading the privacy of the plaintiff, Wrenn F. Weston. K-Mart contends that the trial court erroneously failed to direct a verdict in its favor on those two counts, as well as on the issue of punitive damages; that it erred in submitting those counts and the question of punitive damages to the jury; that it erred in failing to grant K-Mart's motion for new trial and/or judgment notwithstanding the verdict; and that the evidence was insufficient to support the award of damages against K-Mart in the amount of $5,000 compensatory and $15,000 punitive. We affirm.
On January 27, 1986, Weston's husband entered a K-Mart store to purchase certain items. Attempting to pay for the items, Mr. Weston presented a check drawn on Mrs. Weston's account, along with Mrs. Weston's check-cashing card, to the cashier. The cashier checked the number on the check-cashing card against numbers listed on a "pick-up list." When the number on the "pick-up list" matched the number on Mrs. Weston's card (indicating that K-Mart was presently holding a check on that account, which had been dishonored, and that no further checks on that account would be accepted until the dishonored "bad check" had been "picked up" or "made good"), the cashier then proceeded to give both the check and the card to the front check-out supervisor for verification. The supervisor in turn proceeded to the floor manager's station for instructions. The manager instructed the supervisor to inform Mr. Weston that the store would be unable to accept that form of payment, to confiscate the card, and to inform him that he could pick up the card again when the bad check was paid. The supervisor returned to the check-out stand and informed Mr. Weston, in front of several other customers, that he had a bad check and that no further checks would be accepted until the bad check was picked up. Mr. Weston left the store and, upon arriving at his home, immediately telephoned Mrs. Weston at her place of employment. Mrs. Weston made several attempts to resolve the problem by telephone that same day.
The testimony is uncontroverted that the "bad check" referred to was a check drawn on Mrs. Weston's account for $116.28 made payable to K-Mart and returned through a bank error to K-Mart for insufficient funds in late November or early December of 1985. Upon the return of that check, Mrs. Weston had immediately contacted K-Mart Corporation, which assured her that the problem had been resolved. It was not until the January 27 visit that Mrs. Weston found out, via her husband, that a problem existed.
Further attempts by Mrs. Weston to resolve the problem met with resistance from *Page 738 
management-level personnel. Thereafter, Mrs. Weston instituted this action to recover damages for injury to her reputation and for invasion of privacy. From a judgment for Weston, K-Mart appeals.
This Court, in Caterpillar Tractor Co. v. Ford,406 So.2d 854, 856 (Ala. 1981), stated the standard for appellate review of motions for directed verdict:
 "A directed verdict is proper only where there is a complete absence of proof on an issue material to the claim or where there are no disputed questions of fact on which reasonable people could differ. Deal v. Johnson, 362 So.2d 214 (Ala. 1978). In considering a motion for directed verdict, the court must apply Rule 50 (e), A.R.Civ.P., under which `a question must go to the jury, if the evidence, or any reasonable inference arising therefrom, furnishes [so much as] a mere gleam, glimmer, spark, . . . or a scintilla in support of the theory of the complaint. . . .' Dixie Electric Company v. Maggio, 294 Ala. 411, 318 So.2d 274 (1975).
 "In addition, the trial court must view the entire evidence, and all reasonable inferences which a jury might have drawn therefrom, in the light most favorable to the non-moving party. Alabama Power Company v. Taylor, 293 Ala. 484, 306 So.2d 236
(1975); Vintage Enterprises, Inc. v. Cash, 348 So.2d 476 (Ala. 1977). Also, this Court's function in reviewing a motion for a directed verdict is to review the tendencies most favorable to the non-movant, regardless of a view we may have as to the weight of the evidence, and we must allow such reasonable inferences as the jury were free to draw, not inferences which we may think the more probable. Beloit Corp. v. Harrell, 339 So.2d 992 (Ala. 1976)."
See also Surrency v. Harbison, 489 So.2d 1097 (Ala. 1986); Patev. Sunset Funeral Home, 465 So.2d 347 (Ala. 1984); and Ritch v.Waldrop, 428 So.2d 1 (Ala. 1982).
K-Mart argues that there was not a scintilla of evidence to support Weston's claims of defamation and invasion of privacy. K-Mart further argues that if these claims were properly submitted, then the court nevertheless erred in submitting the claim of punitive damages. We disagree. K-Mart's employee openly communicated to Mr. Weston in front of numerous other customers that Mrs. Weston's check would not be accepted because of an outstanding "bad check." The determination of whether such a statement is defamatory is clearly within the discretion of the jury.
Likewise, we agree with the trial court's refusal to grant K-Mart's motion for a directed verdict on the invasion of privacy claim. This Court, in Phillips v. Smalley MaintenanceServices, Inc., 435 So.2d 705 (Ala. 1983), recognized four distinct wrongs that have been generally accepted as comprising the invasion of privacy tort, and effectively adoptedRestatement (Second) of Torts (1955) and its comments. The Court in Phillips stated:
 "Since 1948, beginning with the case of Smith v. Doss, 251 Ala. 250, 37 So.2d 118 (1948), Alabama has recognized the tort of `invasion of the right to privacy.' See Liberty Loan Corporation of Gadsden v. Mizell, 410 So.2d 45 (Ala. 1982); Hamilton v. South Central Bell Telephone Company, 369 So.2d 16
(Ala. 1979).
 "It is generally accepted that the invasion of privacy tort consists of four distinct wrongs: 1) the intrusion upon the plaintiff's physical solitude or seclusion; 2) publicity which violates the ordinary decencies; 3) putting the plaintiff in a false, but not necessarily defamatory, position in the public eye; and 4) the appropriation of some element of the plaintiff's personality for a commercial use. Norris v. Moskin Stores, Inc., 272 Ala. 174, 132 So.2d 321
(Ala. 1961), citing W. Prosser, Law of Torts, pp. 637-39 (2d ed. 1955)."
Phillips v. Smalley Maintenance Services, supra, at 708. K-Mart argues that only two of the four wrongs set out in Phillips —
publicity which violates ordinary decencies and putting the plaintiff in a false, but not necessarily defamatory, position in the public eye — might be applicable on this appeal. *Page 739 
K-Mart is correct in arguing that Weston should not recover under the two invasion of privacy theories listed above. However, the invasion of privacy claim at issue here falls not under the two above-mentioned theories, but under the "wrongful intrusion into one's private activities" language of Smith v.Doss, 251 Ala. 250, 37 So.2d 118 (1948), and the "intrusion upon seclusion" language adopted in Norris v. Moskin Stores,Inc., 272 Ala. 174, 132 So.2d 321 (1961). The Doss Court held:
 "`[The right of privacy] has been defined "as the right of a person to be free from unwarranted publicity," or "the unwarranted appropriation or exploitation of one's personality, the publicizing of one's private affairs with which the public has no legitimate concern, or the wrongful intrusion into one's private activities in such manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities." [Emphasis supplied.]'"
Doss, supra, 251 Ala. at 252-53, 37 So.2d at 120; quoting 41 Am.Jur., Privacy p. 925 (1942).
Evidence presented in regard to the wrongful intrusion argument advocated by Weston presented the scintilla needed to allow the issue to go to the jury for its determination. The Court in Phillips quoted with approval from Bennett v. Norban,396 Pa. 94, 151 A.2d 476 (1959), in which plaintiff was stopped outside defendant's store and searched for shoplifted goods: "[T]he [Pennsylvania] Court held that the plaintiff did have an invasion of privacy action," stating, "`The angry performance of defendant's agent was an unreasonable and serious interference with appellant's desire for anonymity and an intrusion beyond the limits of decency.' 151 A.2d at 479." (Emphasis added.) Phillips, supra, at 710 quoting Bennett, supra. It was within the jury's province to conclude that the plaintiff's desire for anonymity had been interfered with and that the defendant had intruded beyond the limits of decency.
K-Mart next asserts that the trial court erred in failing to direct a verdict on the issue of punitive damages and that submitting that issue to the jury was reversible error. K-Mart cites several cases and Alabama Pattern Jury Instructions:Civil # 23.05 (APJI) as standing for the proposition that punitive damages can be awarded in a defamation case only when actual malice is shown. APJI: Civil # 23.05 states a two-pronged test by which actual malice may be shown and punitive damages awarded in a defamation case: First, punitive damages may be awarded if the defamation was communicated maliciously by the defendant, with knowledge that it was false, or, second, if the defamation was communicated maliciously by the defendant with reckless disregard of whether it was false.
Actual malice may be shown "by evidence of hostility, rivalry, the violence of the language, the mode and extent of publication and prior information regarding its falsity."
(Emphasis added.) Johnson Publishing Co. v. Davis, 271 Ala. 474, 124 So.2d 441 (1960). There was evidence from which the jury might infer malice and, therefore, the submission of the claim for punitive damages was not improper.
Like the standard of review regarding motions for directed verdict, the standard for reviewing a ruling on a motion for JNOV is a well-settled one; the standards are identical. This Court, in Casey v. Jones, 410 So.2d 5, 7 (Ala. 1981), stated:
 "We premise our analysis of the issues on certain familiar, and generally well understood, rules of judicial and appellate review. The standard of judicial review for testing a motion for directed verdict is identical to that for testing a motion for J.N.O.V. Evidence sufficient to take the case to a jury as against a motion for directed verdict is likewise sufficient to withstand a motion for J.N.O.V."
Additionally, in Arata v. Gustin, 410 So.2d 102, 104
(Ala.Civ.App. 1982), it was stated, regarding a motion for new trial, that "[t]he granting or denial of a motion for new trial is presumed correct and will not be reversed on appeal except for plain and palpable abuse of discretion. Holcombe v. *Page 740 Blackwell, 382 So.2d 566 (Ala.Civ.App. 1980)."
The evidence was sufficient — i.e., there was a scintilla — to submit the claims to the jury; therefore, the court properly denied the defendant's motion for JNOV, Casey v. Jones, supra; likewise, the trial court's denial of a new trial cannot be seen as a "plain and palpable abuse of discretion." Holcombe, supra.
Finally, the appellant argues that the evidence presented at trial was insufficient to support the amount of damages awarded. We disagree. The Court, in Pate v. Sunset FuneralHome, supra, stated:
 "A jury's verdict is presumed correct and will not be disturbed unless plainly erroneous or manifestly unjust. The presumption of correctness is further strengthened when a motion for new trial is denied by the trial judge. Smith v. Blankenship, 440 So.2d 1063
(Ala. 1983); Cox v. Herrington, 416 So.2d 968
(Ala. 1982); Williamson v. United Farm Agency, Inc., 401 So.2d 759 (Ala. 1981).
 "In reviewing the correctness of a jury verdict, this Court must review the record in a light most favorable to the appellee. Cox v. Herrington, supra; Cooper v. Peturis, 384 So.2d 1087 (Ala. 1980)."
This Court, in Advertiser Co. v. Jones, 169 Ala. 196,53 So. 759 (1910), addressed the issue of excessive damages, saying:
 "There was evidence from which the jury might infer malice, and upon which they might award punitive damages. This being true, neither the law nor the evidence furnishes us any standard by which we can ascertain certainly that they were excessive. The trial court heard all of this evidence, saw the witnesses, observed their expression and demeanor, and hence was in a better position to judge of the extent of punishment which the evidence warranted than we are, who must form our conclusions upon the mere narrative of the transcript. This court, in treating of excessive verdicts in cases in which punitive damages could be awarded, through Justice Harralson spoke and quoted as follows: `There is no legal measure of damages in cases of this character.'"
See also Johnson Publishing Co. v. Davis, supra,271 Ala. at 488, 124 So.2d at 451.
Reviewing the evidence in a light most favorable to K-Mart, we find no error in the denial of K-Mart's motions, and we conclude that the verdict and the judgment thereon were not plainly erroneous or manifestly unjust.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES, ALMON, SHORES and ADAMS, JJ., concur.
BEATTY, J., concurs in the result.