820 So.2d 81 (2001)
Goodwin MYRICK and John Dorrill, Jr.
v.
Lowell R. BARRON.
Alabama Farmers Federation
v.
Lowell R. Barron.
Alfa Mutual Insurance Company
v.
Lowell R. Barron.
1992055 to 1992057.
Supreme Court of Alabama.
July 6, 2001.
Concurring Opinion on Overruling of Rehearing November 2, 2001.
*82 Edward O. Conerly of Hall, Conerly, Mudd & Bolvig, P.C., Birmingham, for Goodwin L. Myrick and John Dorrill, Jr.
Robert A. Huffaker of Rushton, Stakely, Johnston & Garrett, P.A., Montgomery, for Alabama Farmers Federation.
Connie Ray Stockham and James M. Smith of Stockham & Stockham, P.C., Birmingham; and Patricia C. Kellett of Kellett & Kellett, P.A., Fort Payne, for Alfa Mutual Insurance Company.
Walter R. Byars, James Allen Main, M. Roland Nachman, Jr., and B. Saxon Main of Steiner-Crum, Byars & Main, P.C., Montgomery; and Jere L. Beasley and W. Daniel Miles III of Beasley, Allen, Crow, Methvin, Portis & Miles, P.C., Montgomery, for appellee.
WOODALL, Justice.
A jury found in favor of Lowell R. Barron on his invasion-of-privacy and conspiracy claims, awarding him compensatory damages of $200,000 and punitive damages of $15 million against the defendants Alfa Mutual Insurance Company, Alabama Farmers Federation, Goodwin L. Myrick, and John Dorrill, Jr. (collectively "Alfa"). Alfa filed post-judgment motions seeking, alternatively, a judgment as a matter of law, a new trial, or a remittitur. The trial *83 court denied the motions, except to the extent that it ordered Barron to accept a remittitur of the punitive damages from $15 million to $5 million, or suffer the granting of a new trial. Barron accepted the remittitur, and the trial court then made final its order denying Alfa's post-judgment motions. Alfa appeals, contending that it was entitled to a judgment as a matter of law on Barron's invasion-of-privacy claim and his related conspiracy claim. We reverse and render a judgment for Alfa.

I.
Alfa argues that the trial court erred in denying its motion for a judgment as a matter of law ("JML") on Barron's invasion-of-privacy and conspiracy claims. We have stated our standard of review of a motion for JML:
"[T]he Court uses the same standard the trial court used initially in granting or denying a JML. Palm Harbor Homes, Inc. v. Crawford, 689 So.2d 3 (Ala.1997). Regarding questions of fact, the ultimate question is whether the nonmovant has presented sufficient evidence to allow the case or the issue to be submitted to the jury for a factual resolution. Carter v. Henderson, 598 So.2d 1350 (Ala.1992). For actions filed after June 11, 1987, the nonmovant must present `substantial evidence' in order to withstand a motion for a JML. See § 12-21-12, Ala.Code 1975; West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989). A reviewing court must determine whether the party who bears the burden of proof has produced substantial evidence creating a factual dispute requiring resolution by the jury. Carter, 598 So.2d at 1353. In reviewing a ruling on a motion for a JML, this Court views the evidence in the light most favorable to the nonmovant and entertains such reasonable inferences as the jury would have been free to draw. Motion Industries, Inc. v. Pate, 678 So.2d 724 (Ala.1996). Regarding a question of law, however, this Court indulges no presumption of correctness as to the trial court's ruling. Ricwil, Inc. v. S.L. Pappas & Co., 599 So.2d 1126 (Ala. 1992)."
Delchamps, Inc. v. Bryant, 738 So.2d 824, 830-31 (Ala.1999). We must review the trial court's ruling on Alfa's motion for a JML under these well established principles.

II.
Barron is a state senator and is President Pro Tem of the Alabama Senate. He has been a public official for more than twenty years, and has served in the legislature since 1983. By his own admission, Barron has "significant influence" in the Senate. Brief of Appellee, at 9.
Alabama Farmers Federation is a nonprofit membership organization consisting of approximately 400,000 members throughout Alabama. At the time of the events at issue, John Dorrill, Jr., was the Federation's executive director. Alfa Mutual Insurance Company is a domestic insurance company, organized by the predecessor of Alabama Farmers Federation to provide property insurance coverage for Alabama farmers who could not obtain coverage from other insurers. Goodwin L. Myrick served as president and chief executive officer of the Federation and Alfa Mutual.
In September 1995, Governor Fob James nominated Phil Richardson, Alfa Mutual's executive vice-president, for membership on the Board of Trustees of Auburn University, to fill the seat occupied by Bobby Lowder, whose term had expired in January 1995, and who was "holding over" in office. In February 1996, *84 Richardson's nomination was submitted to the Senate for confirmation. Barron publicly committed to support Lowder, as did Senator Hinton Mitchem, the chairman of the committee which had to approve Richardson's nomination before the full Senate could vote on the matter.
In July 1996, Alfa representatives met with Barron to attempt to persuade him to support Richardson's nomination. After Barron reiterated his support of Lowder, there was, according to Barron, a heated exchange between Dorrill and him. Barron testified that Dorrill threatened him by saying that "we will do everything we can to take you down. We will try to defeat you." Senator Mitchem testified that Dorrill told him that if Mitchem did not support Richardson, Alfa was going to "bury" Barron and Mitchem.
Alfa then began an investigation of Barron and Mitchem. Kelli Van Landingham, an employee of the Federation, following Dorrill's directions, conducted a public records search on Barron and several other senators. "Admittedly, [Alfa] did check public records and could do so without violating Barron's privacy." Brief of Appellee, at 23. There is no claim that Van Landingham did anything other than review the public records of the Ethics Commission and the Secretary of State, and also review newspaper articles.
Alfa next hired George Culver to investigate Barron, including Barron's relationship with Lowder. On August 30, 1996, Alfa entered into a contract with Culver's company, ECAER, Inc., for the purpose of having Barron investigated. With Alfa's permission, Culver engaged Argus Protective Services to conduct the investigation.
Argus, like Van Landingham, reviewed public records concerning Barron and his businesses. Additionally, Argus assigned to one of its investigators, Paul Harrington, the task of interviewing persons who knew Barron. Harrington died before trial, and he had not been deposed. While his reports indicate that Harrington interviewed numerous identified persons in De-Kalb County, no interviewee testified at trial. The Argus reports following these voluntary interviews reflect allegations of various improprieties, none of which was supported by any evidence, and none of which merits any mention in our consideration of this matter.
Barron learned of Alfa's investigation, and held a news conference on July 8, 1997, to condemn Alfa for conducting the investigation. Alfa initially denied that any investigation had been conducted. However, on July 2, 1999, Alfa admitted that a private investigation firm was hired to gather information pertaining to Barron and Mitchem.

III.
Barron filed his invasion-of-privacy complaint on July 21, 1997, against Alfa, Argus Protective Services, and Charles Scarbrough, an Argus investigator.[1] Barron sought damages for and injunctive relief against the invasion of his right to privacy.
Alfa filed a motion to dismiss, relying in large measure on this Court's decision in Johnston v. Fuller, 706 So.2d 700 (Ala. 1997). The trial court denied the motion to dismiss, and Alfa filed its answer, denying the material allegations of the invasion-of-privacy claim.
Barron amended his complaint to add claims of outrage, extortion and/or blackmail, fraudulent suppression, wanton breach of fiduciary duty, conspiracy, and defamation. Alfa denied these claims and, *85 after extensive discovery, moved for summary judgment. The trial court granted the motion as to all claims other than invasion of privacy and conspiracy.
This matter was tried before a jury commencing on February 14, 2000. At the conclusion of all of the evidence, Alfa moved for a JML on the invasion-of-privacy and conspiracy claims. The trial court granted the motion as to the claim that Alfa had placed Barron in a false light in the public eye, but denied the motion as to the claim that Alfa had wrongfully intruded into Barron's physical solitude or seclusion. The remaining invasion-of-privacy claim and the conspiracy claim were submitted to the jury.
As previously discussed, the jury returned a verdict against Alfa. Alfa appeals, contending that it was entitled to a judgment as a matter of law on Barron's remaining invasion-of-privacy claim and his conspiracy claim.

IV.
Barron contends that there was substantial evidence that Alfa violated the wrongful-intrusion branch of the invasion-of-privacy tort. Barron argues that Alfa was "guilty of intrusion and prying into things which are `entitled to be private,' when [its] investigation included Senator Barron's private life and private activities.... These private issues came from, or were to come from, interviews of private individuals, not a review of public records, in an attempt to bring about `the demise' of Barron...." Brief of Appellee, at 23-24. Barron's argument fails, however, because interviews of other people about their knowledge of Barron could reveal only information already known (or allegedly known) by those people.
This Court has defined the scope of the wrongful-intrusion branch of the invasion-of-privacy tort:
"The `wrongful intrusion' prong of the tort of invasion of privacy has been defined as the `intentional interference with another's interest in solitude or seclusion, either as to his person or to his private affairs or concerns.' W. Prosser & W. Keeton, The Law of Torts, p. 851 (5th ed.1984). `[T]here must be something in the nature of prying or intrusion' and `the intrusion must be something which would be offensive or objectionable to a reasonable person. The thing into which there is intrusion or prying must be, and be entitled to be, private.' Id. at 855."
Hogin v. Cottingham, 533 So.2d 525, 531 (Ala.1988) (footnote deleted; emphasis supplied). Can information which other people claim to know about Barron be protected as "private" and, thereby, be shielded from inquiry by this branch of the invasion-of-privacy tort? Common sense and legal precedent dictate a negative response to this question.
This is not the first time that a plaintiff has attempted to base an invasion-of-privacy claim upon an investigation which consisted of interviewing people about their knowledge of the plaintiff. In Johnston v. Fuller, 706 So.2d 700 (Ala.1997), this Court unanimously affirmed a summary judgment in favor of the defendants where such a claim was made. We described the background of that dispute:
"This invasion-of-privacy case arises from an investigation of complaints made about a game warden employed by the Alabama Department of Conservation and Natural Resources (the `Department'), concerning that game warden's alleged threat to kill Roy Johnston. The plaintiff, Johnston, alleges that the defendantscertain employees of Department and a probate judgeturned the game warden investigation, *86 which consisted primarily of interviews of people who knew of the animosity between Johnston and the game warden, into an investigation of Johnston alone, and that this invaded Johnston's privacy."
Id. at 701. Johnston admitted that "the investigation consisted solely of interviewing people about their knowledge of [him] and of [the game warden]." Id. at 702. This Court rejected Johnston's invitation to create such a broad privacy cause of action, stating:
"In Phillips v. Smalley Maintenance Services, Inc., 435 So.2d 705 (Ala.1983), this Court adopted the Restatement (Second) of Torts definition of the wrongful-intrusion branch of the invasion-of-privacy tort:
"`One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.'

"Restatement (Second) of Torts, § 652B (1977). Comment c to § 652B states in part: `The defendant is subject to liability under the rule stated in this Section only when he has intruded into a private place, or has otherwise invaded a private seclusion that the plaintiff has thrown about his person or affairs.' The wrongful intrusion may be by physical intrusion into a place where the plaintiff has secluded himself, by discovering the plaintiff's private affairs through wiretapping or eavesdropping, or by some investigation into the plaintiffs private concerns, such as opening private mail or examining a private bank account. Restatement (Second) of Torts § 652B cmt. b; see Vernars v. Young, 539 F.2d 966 (3d Cir.1976)(holding that invasion of privacy occurred when mail addressed to plaintiff was opened by defendant without plaintiffs consent); see generally, W. Page Keeton, et al., Prosser and Keeton on the Law of Torts, § 117, at 854-55 (5th ed.1984); 62 Am.Jur.2d Privacy §§ 51-57 (1990). Further, if the means of gathering the information are excessively objectionable and improper, a wrongful intrusion may occur. See Hogin v. Cottingham, 533 So.2d 525 (Ala.1988) (wrongful intrusion occurs when there has been abrupt, offensive, and objectionable prying into information that is entitled to be private).
"Johnston did not allege that the defendants entered his home, searched though his private papers, wiretapped his telephone, or eavesdropped on his conversations. Johnston did not allege that the defendants obtained private records concerning his affairs. Johnston failed to present any evidence that Fuller's conduct in gathering the information was abrupt, offensive, and objectionable. Johnston admits that the defendants obtained their knowledge of him through first-hand conversations with him and through voluntary interviews with members of the community in which Johnston lived.
"In Nader v. General Motors Corp., 25 N.Y.2d 560, 255 N.E.2d 765, 307 N.Y.S.2d 647 (1970), the Court of Appeals of New York dealt with a similar wrongful-intrusion claim arising in part from the defendant's voluntary interviews with acquaintances of the plaintiff. The court stated:
"`[W]e cannot find any basis for a claim of invasion-of-privacy [based on wrongful intrusion] ... in the allegations that the [defendant], through its agents or employees, interviewed many persons who knew the plaintiff, asking questions about him and *87 casting aspersions on his character. Although those inquiries may have uncovered information of a personal nature, it is difficult to see how they may be said to have invaded the plaintiffs privacy. Information about the plaintiff which was already known to others could hardly be regarded as private to the plaintiff. Presumably, the plaintiff had previously revealed the information to such other persons, and he would necessarily assume the risk that a friend or acquaintance in whom he had confided might breach the confidence. If, as alleged, the questions tended to disparage the plaintiffs character, his remedy would seem to be by way of an action for defamation, not for breach of his right to privacy.'
"Nader, 25 N.Y.2d at 568-69, 255 N.E.2d at 770, 307 N.Y.S.2d at 654. Accord Nipper v. Variety Wholesalers, Inc., 638 So.2d 778 (Ala.1994) (interviewing co-employees about their general knowledge of the plaintiff was not actionable).
"Likewise, Johnston's allegations concern only voluntary interviews in which the defendants learned information already known to others. This information is not protected by the limited scope of the wrongful-intrusion branch of the invasion-of-privacy tort, and we reject Johnston's invitation to create a broad privacy action, with no metes and bounds, that would extend beyond his dwelling, papers, and private records, creating unknown dangers to unsuspecting routine inquirers."
Id. at 702-03 (footnote deleted). Barron's invasion-of-privacy claim suffers from the same fatal deficiencies as did Johnston's claim.
Barron does not allege that Alfa or Argus entered his home, searched through his private papers, wiretapped his telephone, or eavesdropped on any of his conversations. Barron does not allege that Alfa obtained private records concerning his business or personal affairs. Barron has presented no evidence that Harrington's conduct in gathering the information was abrupt, offensive, or otherwise objectionable. Barron has presented no evidence that Alfa obtained any knowledge of him other than through the review of public records and through voluntary interviews with members of the community in which he lives. Indeed, his allegations concern only voluntary interviews in which Alfa only learned information already known (or allegedly known) by others. This Court remains unwilling "to create a broad privacy action, with no metes and bounds, that would extend beyond [one's] dwelling, papers, and private records, creating unknown dangers to unsuspecting routine inquirers." Id. at 703.[2]

V.
The trial court erred in denying Alfa's motion for a JML on Barron's remaining invasion-of-privacy claim and his conspiracy claim. Therefore, the judgment of the trial court is reversed, and a judgment is rendered for Alfa Mutual Insurance Company, Alabama Farmers Federation, Goodwin L. Myrick, and John Dorrill, Jr.
REVERSED AND JUDGMENT RENDERED.
HOUSTON, SEE, LYONS, BROWN, HARWOOD, and STUART, JJ., concur.
MOORE, C.J., recuses himself.

*88 On Application for Rehearing

WOODALL, Justice.
APPLICATION OVERRULED. NO OPINION.
SEE, LYONS, BROWN, HARWOOD, and STUART, JJ., concur.
HOUSTON, J., concurs specially.
MOORE, C.J., recuses himself.
HOUSTON, Justice (concurring specially).
Since at least 1994, interviewing others about their general knowledge of a plaintiff was not actionable as an invasion-of-privacy claim based on wrongful intrusion. Nipper v. Variety Wholesalers, Inc., 638 So.2d 778 (Ala.1994).
In 1997, two years and seven months before the jury trial in this case, this Court in Johnston v. Fuller, 706 So.2d 700, 702 (Ala.1997)(with Justice See writing and Chief Justice Hooper and Justices Maddox, Almon, Houston, Kennedy, Cook, and Butts concurring; and Justice Shores concurring in the result without writing), quoted with approval the following from Nader v. General Motors Corp., 25 N.Y.2d 560, 255 N.E.2d 765, 307 N.Y.S.2d 647 (1970):
"`[W]e cannot find any basis for a claim of invasion of privacy [based on wrongful intrusion] ... in the allegations that the [defendant], through its agents or employees, interviewed many persons who knew the plaintiff, asking questions about him and casting aspersions on his character.... If as alleged, the questions tended to disparage the plaintiff's character, his remedy would seem to be by way of an action for defamation, not for breach of his right to privacy.'"

In Johnston, the plaintiff had unsuccessfully attempted to recover for an invasion of privacy as a result of interviews with people who knew of the animosity between Johnston and a game warden, who had allegedly threatened to kill Johnston. This Court held:
"[W]e reject Johnston's invitation to create a broad privacy action, with no metes and bounds, that would extend beyond his dwelling, papers, and private records, creating unknown dangers to unsuspecting routine inquirers."
Johnston, 706 So.2d at 703.
Therefore, since at least 1997, the invasion-of-privacy claim based upon wrongful intrusion in Alabama has been limited to one's dwelling, papers, and private records. Senator Barron's claim exceeded these limits. Senator Barron alleged that the interviewer's questions "tended to disparage" his character. More than two and a half years before the present case was tried, this Court strongly indicated, if we did not hold, by quoting with approval Nader v. General Motors, supra, that in such a case the remedy, if any, would be for defamation, not for invasion of privacy.
Senator Barron filed a claim alleging defamation; that claim was dismissed on a motion for a summary judgment. Senator Barron failed to cross-appeal or to make a cross-assignment of error on the dismissal of the defamation claim.
Therefore, this Court was barred from considering whether the trial court had erroneously dismissed the defamation claim. Price v. South Cent. Bell, 294 Ala. 144, 313 So.2d 184 (1975). I regret that we cannot consider whether the defamation claim was erroneously dismissed; however, that cannot deter this Court from following precedent and holding that as a matter of law Senator Barron's invasion-of-privacy claim based upon wrongful intrusion was not a viable claim.
NOTES
[1] Prior to trial, Barron reached a pro tanto settlement with Argus and Scarbrough, and his claims against those defendants were dismissed with prejudice.
[2] Barron's claim that the defendants conspired to invade his privacy also fails because the alleged object of the conspiracy was not tortious in and of itself. See Johnston v. Fuller, supra, at 703, n. 4.