[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 161 
Annette L. Key ("Key"), individually and on behalf of her two minor sons, Jeffery P. Parker and Brian Parker (hereinafter together referred to as the "plaintiffs"), sued The City of Cullman; Lieutenant Max Bartlett; Compass Bank, Inc.; and The Cullman Times n/k/a APAC-95 Alabama Holdings, Inc. In their complaint, the plaintiffs sought damages for claims alleging negligence, libel, slander, "false light," wrongful intrusion into their privacy, violation of their rights to privacy, and the tort of outrage.
On December 20, 2000, the trial court entered a summary judgment in favor of Compass on all of the plaintiffs' claims against it. On February 7, 2001, the trial court certified the summary judgment in favor of Compass as final pursuant to Rule 54(b), Ala.R.Civ.P., and the plaintiffs appealed. The Supreme Court of Alabama transferred the appeal to this court, pursuant to § 12-2-7(6), Ala. Code 1975.
A motion for a summary judgment is properly granted where no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Rule 56, Ala.R.Civ.P.; Bussey v. John DeereCo., 531 So.2d 860 (Ala. 1988). After the moving party makes its prima facie showing that there is no genuine *Page 162 
issue of material fact, the burden then shifts to the nonmoving party to demonstrate the existence of a genuine issue of material fact. Bass v.SouthTrust Bank of Baldwin County, 538 So.2d 794 (Ala. 1989). To carry that burden, the nonmoving party is required to present substantial evidence, i.e., "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders LifeAssurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989). In reviewing a summary judgment, this court must view the evidence in a light most favorable to the nonmoving party, and must resolve all reasonable doubts concerning the existence of a genuine issue of material fact in favor of the nonmovant. Hanners v. Balfour Guthrie, Inc., 564 So.2d 412 (Ala. 1990).
The facts are essentially undisputed. In June 1998, Jennifer Lindley, a college student, reported to the police that a blank check had been stolen from her automobile. On June 2, 1998, that stolen check, containing a forgery of Lindley's signature, was cashed at the main branch of Compass Bank in Cullman (hereinafter "Compass"); the amount of that forged check was $100.
Also on June 2, 1998, the plaintiffs went to Compass so that Key, who had a checking account at Compass, could cash a personal check. Key wrote a check for $100, and the bank teller gave her that amount in cash. Key's two teenaged sons accompanied her while she conducted that banking transaction. While they were in the lobby, the plaintiffs were videotaped by Compass's surveillance cameras.
On June 30, 1998, a photograph of the plaintiffs taken from the surveillance videotape was published in The Cullman Times, a newspaper of general publication in the community. The caption under the photograph stated, "[t]his bank surveillance photo shows three suspects the Cullman Police Department are looking for in connection with a forgery case." The article, in its entirety, read as follows:
 "Cullman Police Department on Trail of Forgery Suspects.
 "The Cullman Police Department is asking for help in catching a forgery suspect and two possible accomplices.
 "On June 2, two white males and a white female cashed a stolen check at the main branch of Compass Bank.
 "Lt. Max Bartlett of the police department said the checkbook had been reportedly stolen from a vehicle parked at Wallace State Community College.
 "`We feel like they are possibly students,' Bartlett said of the suspects.
 "Anyone with information may call investigation at 734-2868 or CrimeStoppers at 734-7800.
 "Callers to CrimeStoppers do not have to give their name and may receive a reward for information that leads to an arrest and subsequent sentence."
Delores Osborn, the banking center manager for Compass, testified that Compass did not conduct an internal investigation of the forgery because of the amount of the forged check. She testified that "[s]omething this size, meaning small amount, we do not pursue it any further."
Lt. Max Bartlett was the police officer assigned to investigate the forged check. Bartlett testified that he contacted Osborn in his effort to investigate the forgery. Bartlett and Osborn determined from the stamp on the face of the forged check that the check was cashed in lobby of the bank on June 2, 1998, at 1:33 p.m., by teller number four. Bartlett then reviewed Compass's surveillance videotape with Linda Owens, the teller-operations coordinator for Compass. Each Compass teller *Page 163 
maintains a "teller tape" on which a record of each banking transaction handled by that teller is recorded; Bartlett did not examine the teller tape in the early part of the investigation of the forgery. Bartlett could not make a good identification of the possible suspects from the videotape; therefore, he asked Owens for still photographs of the images from the surveillance videotape. Owens explained to Bartlett that a one-to-two minute variation could exist between the time listed on the surveillance video and the time stamped on the forged check or the teller tape. Therefore, Bartlett requested that Compass provide him photographs developed from the videotape that would depict those people in the bank lobby for the period beginning 10 minutes before the forged check was cashed and ending 10 minutes after that check was cashed, i.e., between 1:23 p.m. and 1:43 p.m.
Owens forwarded Bartlett's request for photographs taken from the surveillance videotape to Kevin Kuykendall, who worked in Compass's security department. Kuykendall used computer technology to obtain photographs from the June 2, 1998, surveillance videotape. The photographs depicted a number of Compass customers who had performed banking transactions during the relevant 20-minute time period. Kuykendall sent the photographs to Owens, and Owens delivered them to Bartlett.
Among the photographs provided to Bartlett were photographs of the plaintiffs; the time recorded on those photographs indicated that the surveillance camera videotaped the plaintiffs at 1:38 p.m. Bartlett testified that although the time at which the photographs of the plaintiffs were taken was outside the one-to-two-minute time variation between the time stamped on the forged check and the time listed on the videotaped surveillance, Key's transaction was "by far the closest" in time to the time stamped on the forged check. Bartlett testified that he did not attempt to compare the teller tape, which contained a list of the account numbers upon which transactions had been conducted, to the surveillance videotape in order to attempt to determine which Compass customers had conducted banking transactions and were depicted on the videotape.
Bartlett testified that after he reviewed the photographs taken from the June 2, 1998, surveillance videotape, he asked Owens and Osborn whether they could identify the people in the photographs taken from the surveillance videotape, but they could not. Bartlett determined that the plaintiffs were the persons who had conducted a banking transaction closest in time to the 1:33 time stamped on the forged check. Therefore, he testified, he concluded that the plaintiffs were "strong suspects" in the forgery investigation. Bartlett testified that he then asked Beth Lakey, a reporter at The Cullman Times, to run an article about the forgery, together with a photograph of the plaintiffs, in the "Crimestoppers" section of The Cullman Times. Bartlett testified that he requested that Lakey publish the photograph of the plaintiffs as an attempt to identify the people in that photograph. Bartlett testified that Lakey authored the article that appeared in The Cullman Times. It is undisputed that Bartlett did not discuss his intention to publish the photograph of the plaintiffs in a "Crimestoppers" article with anyone at Compass.
After the article appeared in The Cullman Times, someone identified Key from the photograph taken from the surveillance video and notified Bartlett of Key's identity. Bartlett testified that he interviewed Key and that their conversation lasted approximately 10 minutes. Bartlett stated that Key denied that she had committed the forgery. Key provided Bartlett *Page 164 
with her checking account number so that he could verify that she was conducting a transaction on her own account when she was videotaped by surveillance cameras. Bartlett then obtained a subpoena for the teller tape that reflected transactions occurring at or close to the time of the forgery. The teller tape indicated that Key's transaction took place "in a different location, [at] a different time" than that of the forged check.
Several of the plaintiffs' acquaintances recognized them from the photograph in the June 30, 1998, newspaper article. At Key's request, TheCullman Times printed a retraction of the June 30, 1998, "Crimestoppers" article.
 I.
On appeal, the plaintiffs first argue that the trial court erred in entering a summary judgment in favor of Compass on their claims involving invasion of privacy.
 "Alabama has long recognized the tort of invasion of privacy. Smith v. Doss, 251 Ala. 250, 37 So.2d 118
(1948). It is generally accepted that invasion of privacy consists of four limited and distinct wrongs: (1) intruding into the plaintiff's physical solitude or seclusion; (2) giving publicity to private information about the plaintiff that violates ordinary decency; (3) putting the plaintiff in a false, but not necessarily defamatory, position in the public eye; or (4) appropriating some element of the plaintiff's personality for a commercial use. Norris v. Moskin Stores, Inc., 272 Ala. 174, 132 So.2d 321 (1961)."
Johnston v. Fuller, 706 So.2d 700, 701 (Ala. 1997). The plaintiffs claim that Compass invaded their privacy by intruding into their physical solitude, by giving publicity about them that violated ordinary decency, and by placing them in a false light.
The plaintiffs first maintain that Compass intruded upon their solitude or seclusion.
 "In Phillips v. Smalley Maintenance Services, Inc., 435 So.2d 705 (Ala. 1983), this Court adopted the Restatement (Second) of Torts definition of the wrongful-intrusion branch of the invasion-of-privacy tort:
 "`One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.'
 "Restatement (Second) of Torts § 652B (1977). Comment c to § 652B states in part: `The defendant is subject to liability under the rule stated in this Section only when he has intruded into a private place, or has otherwise invaded a private seclusion that the plaintiff has thrown about his person or affairs.' The wrongful intrusion may be by physical intrusion into a place where the plaintiff has secluded himself, by discovering the plaintiff's private affairs through wiretapping or eavesdropping, or by some investigation into the plaintiff's private concerns, such as opening private mail or examining a private bank account. Restatement (Second) of Torts
§ 652B cmt. b; see Vernars v. Young, 539 F.2d 966
(3d Cir. 1976) (holding that invasion of privacy occurred when mail addressed to plaintiff was opened by defendant without plaintiff's consent); see generally, W. Page Keeton, et al., Prosser and Keeton on the Law of Torts, § 117, at 854-55 (5th ed. 1984); 62 Am. Jur.2d Privacy §§ 51-57 (1990). Further, if the means of gathering the information are excessively objectionable and improper, a wrongful intrusion may occur. *Page 165 
 See Hogin v. Cottingham, 533 So.2d 525 (Ala. 1988) (wrongful intrusion occurs when there has been abrupt, offensive, and objectionable prying into information that is entitled to be private)."
Johnston v. Fuller, 706 So.2d at 702.
Initially, we must determine whether the matter that was allegedly intruded upon was entitled to be private. Hogin v. Cottingham,533 So.2d 525 (Ala. 1988). It is undisputed that as Key conducted a banking transaction, the plaintiffs were videotaped by a surveillance camera located in the bank lobby. Normally, there is no liability for photographing a person in a public place. However, an exception to that general rule is where the photographs constitute an intrusion into matters that the person intends not to be "`exhibited to the public gaze.'" Schifano v. Greene County Greyhound Park, 624 So.2d 178, 180
(Ala. 1993) (quoting Comment c to the Restatement (Second) of Torts, § 652B (1977)).
In Schifano v. Greene County Greyhound Park, Inc., supra, the defendant used, for publicity purposes, a photograph that depicted the plaintiffs sitting at the defendant's public facilities. Our supreme court held that no wrongful intrusion into the plaintiffs' privacy had occurred, because the plaintiffs were photographed while engaged in activities in a public place. Similarly, in this case, the photographs were taken in a public place, and, therefore, would generally not constitute an intrusion into the plaintiffs' solitude or seclusion. Schifano v. Greene CountyGreyhound Park, supra (citing Comment c, Restatement (Second) of Torts, § 652B (1977)).
In Daily Times Democrat v. Graham, 276 Ala. 380, 162 So.2d 474 (1964), a reporter for the defendant newspaper took a photograph of Graham when air jets from a "fun house" at a county fair had blown Graham's skirt up, exposing her from the waist down. Our supreme court affirmed a jury verdict in favor of Graham on her invasion-of-privacy claim, stating:
 "One who is a part of a public scene may be lawfully photographed as an incidental part of that scene in his ordinary status. Where the status he expects to occupy is changed without [her] volition to a status embarrassing to an ordinary person of reasonable sensitivity, then he should not be deemed to have forfeited his right to be protected from an indecent and vulgar intrusion of his right of privacy merely because misfortune overtakes him in a public place."
Daily Times Democrat v. Graham, 276 Ala. at 383.
Citing Daily Times Democrat v. Graham, supra, the plaintiffs argue that Compass's actions "took [the plaintiffs] out of the ordinary status of bank customer and made [them] into the innocent object of a criminal investigation," and that Compass's giving the photographs to Bartlett unreasonably intruded upon their solitude and seclusion. The plaintiffs have not argued that the photographs taken by the surveillance camera allowed Compass to intrude upon matters that the plaintiffs intended not to expose to the public gaze. See Schifano v. Greene County GreyhoundPark, 624 So.2d at 180.
In the recent case of Myrick v. Barron, 820 So.2d 81 (Ala. 2001), a jury awarded the plaintiff, Barron, damages on his claims alleging invasion of privacy and conspiracy. Barron alleged that the defendant insurance company had conducted an investigation of him that constituted an improper intrusion into his privacy and seclusion. The insurance company had searched public records and had conducted interviews with Barron's acquaintances in an effort to gain information about him. *Page 166 
Our supreme court reversed the judgment entered on the jury's verdict, holding that the trial court erred by not entering a judgment as a matter of law on the invasion-of-privacy claim. In so holding, the court noted that Barron had not alleged that the defendant "entered his home, searched through his private papers, wiretapped his telephone, . . . eavesdropped on any of his conversations . . . [or] obtained private records concerning his business or personal affairs." Myrick v. Barron,820 So.2d at 87. The court held that because the defendant obtained information about Barron only by searching public records and obtaining voluntary interviews with people in the community, the information it had obtained was "already known," and, therefore, was not private. Myrick v.Barron, 820 So.2d at 87.
Compass obtained photographs of the plaintiffs in a public place; it provided those photographs to Bartlett, a police investigator, to assist in a criminal investigation of a forgery that had occurred on Compass's premises. In obtaining the photographs, Compass did not intrude into the plaintiffs' home, eavesdrop, or obtain personal records. See Myrick v.Barron, supra. Based on the foregoing authorities, we cannot say that Compass's videotaped surveillance or its providing the photographs from that videotape to Bartlett constituted an intrusion into the plaintiffs' solitude or seclusion. It is only when those actions are combined with those of Bartlett and The Cullman Times that an intrusion into the plaintiffs' privacy arguably occurred.
In furtherance of their argument on this issue, the plaintiffs argue that Compass's act of complying with the police investigation into the forgery is actionable under the holding of K-Mart Corp. v. Weston,530 So.2d 736 (Ala. 1988). In that case, the defendant's store manager informed the plaintiff's husband, in front of several other customers, that he had negotiated a worthless check at K-Mart and that his checks would no longer be accepted at the store until he had paid the amount of the worthless check. 530 So.2d at 737. Our supreme court affirmed a jury verdict in favor of the plaintiff, holding that she had presented the scintilla of evidence necessary to allow the issue of the alleged wrongful intrusion into privacy to be determined by the jury. Id.
Unlike the situation in K-Mart Corp. v. Weston, supra, in which a K-Mart representative had publicly accused Weston of wrongdoing, the record in this case does not indicate that Compass accused the plaintiffs of wrongdoing, nor did it communicate to any person or entity that the plaintiffs were guilty of the forgery. Compass merely provided Bartlett with photographs of those people who had performed banking transactions at or about the time of the forgery. Compass did not indicate to Bartlett that the plaintiffs should be considered as suspects, and it is undisputed that Compass did not assist Bartlett in selecting the plaintiffs as likely suspects in the forgery. We cannot say that the plaintiffs have demonstrated error as to this issue.
The plaintiffs also argue that Compass improperly gave publicity to private information about them. Our supreme court addressed the tort of giving publicity to private information as follows:
 "`One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that
 "`(a) would be highly offensive to a reasonable person, and
"`(b) is not of legitimate concern to the public.' *Page 167 
 "Restatement (Second) of Torts § 652D (emphasis added)."
Johnston v. Fuller, 706 So.2d at 703. The comments to the Restatement(Second) of Torts, § 652D, provide that "publication" occurs when any communication of a private matter is made, but that "publicity," at least for the purposes of § 652D, requires that the publication of the private matter be made to the public at large. Johnston v. Fuller, 706 So.2d at 703. Thus, an invasion of privacy as defined in Restatement(Second) of Torts, § 652D (1977) requires more than a communication of a fact to a single person or even to a small group of people. Ex parteBirmingham News, Inc., 778 So.2d 814 (Ala. 2000); Johnston v. Fuller, supra.
In Ex parte Birmingham News, Inc., supra, the plaintiff, an employee of the defendant, made a complaint to the defendant employer that a coworker had sexually harassed her. At least two of the plaintiff's supervisors learned of her complaint through the investigation of the complaint; two other employees learned of the alleged sexual-harassment incident from the plaintiff. Our supreme court held that the trial court had erred in failing to grant the defendant's motion for a judgment as a matter of law on the plaintiff's claim of invasion of privacy. The court held that the knowledge of the plaintiff's supervisors of her complaint against her coworker did not constitute "publicity" for the purposes of maintaining a claim of invasion of privacy by giving publicity to private information about the plaintiff, because the information was communicated to, at most, only a small group of people. Ex parte Birmingham News, Inc., 778 So.2d at 819.
In Johnston v. Fuller, supra, the defendant, a law-enforcement officer, investigated into a threat against the plaintiff's life. The defendant provided the file containing the findings from his investigation to a friend of the plaintiff's whose complaint had prompted the investigation. The defendant asked that friend to keep the file confidential, but he showed the file to the plaintiff. The plaintiff later sued the defendant, alleging that the defendant had invaded his privacy by giving publicity to private information about him. Our supreme court affirmed the trial court's summary judgment, holding that the defendant's actions did not amount to an invasion of the plaintiff's privacy through publication of private information because the information was given to only one person, and not to the public at large. Johnstonv. Fuller, 706 So.2d at 703.
In this case, Compass provided the photographs of the plaintiffs to only one person, Bartlett. Given the holdings of Ex parte BirminghamNews, Inc., supra, and Johnston v. Fuller, supra, we cannot conclude that Compass's actions constituted "publicity" that would support a claim alleging invasion of privacy through giving publicity to private information.
We note that the plaintiffs argue that Compass should have foreseen that Bartlett would publish the photographs to the general public through the course of his investigation of the forgery, and that, therefore, Compass should be liable under this cause of action. However, the cause of action for this form of invasion of privacy addresses only the defendant's actual conduct; it does not address liability for the allegedly foreseeable consequences of that conduct. This court is not willing to so broadly expand this cause of action for invasion of privacy, especially where, as here, the conduct for which the plaintiffs seek to hold the defendant liable arose out of the defendant's cooperation with a law-enforcement investigation.
Further, the matter to which the plaintiffs allege that Compass gave "publicity" is the photographs of them conducting a *Page 168 
banking transaction in the bank lobby, a public place. The plaintiffs have not alleged that their being in the bank or conducting a banking transaction was a matter of such a kind that its publicity would be highly offensive to reasonable persons. See Johnston v. Fuller, supra. The trial court did not err in entering a summary judgment in favor of Compass on the plaintiffs' claim of invasion of privacy by giving publicity to private information.
The plaintiffs next argue that Compass placed the plaintiffs in a "false light." In Schifano v. Greene County Greyhound Park, supra, our supreme court quoted the Restatement (Second) of Torts, § 652E (1977), in defining the cause of action for placing a person in a false light:
 "One who gives publicity to a matter concerning another that placed the other before the public in a false light is subject to liability to the other for invasion of his privacy, if:
 "a) the false light in which the other was placed would be highly offensive to a reasonable person, and
 "b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed."
624 So.2d at 180.
In making their argument on this issue, the plaintiffs again attempt to attribute to Compass liability for the eventual publication of the newspaper article. However, contrary to the plaintiffs' assertions, whether Compass gave publicity to the photograph of them and thereby placed them in a false light is not a question for the trier of fact. The evidence indicates that Compass gave the photograph only to Bartlett. Therefore, it cannot be said that Compass "place[d the plaintiffs] before the public." Id.
Also, the plaintiffs argue that the photograph depicts them allegedly cashing a forged check. We cannot agree. The photograph provided by Compass to Bartlett merely depicts the plaintiffs engaged in a banking transaction. Thus, the photograph alone does not portray the plaintiffs in a situation that would be "highly offensive to a reasonable person." The "Crimestoppers" article in The Cullman Times stating that the plaintiffs were suspected of cashing a forged check, together with the photograph of the plaintiffs conducting a banking transaction, arguably places the plaintiffs in a false light. However, the photograph taken by Compass, by itself, cannot be said to place the plaintiffs in a "false light." We cannot say that the trial court erred in entering a summary judgment in favor of Compass on this claim.
 II.
The plaintiffs also argue that the trial court erred in entering a summary judgment in favor of Compass on their claim alleging the tort of outrage. In order to establish a cause of action for the tort of outrage, the plaintiffs must establish "(1) that the defendant's conduct was intentional or reckless; (2) that it was extreme and outrageous; and (3) that it caused emotional distress so severe that no reasonable person could be expected to endure it." Jenkins v. United States Fid. Guar.Co., 698 So.2d 765, 768 (Ala. 1997). In defining the level of extreme conduct necessary to support a claim of outrage, our supreme court stated that the conduct must be "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." AmericanRoad Serv. Co. v. Inmon, 394 So.2d 361, 365 (Ala. 1980). *Page 169 
The plaintiffs characterize Compass's giving Bartlett access to the surveillance video and the photographs taken from that video as "reckless"; they argue that that conduct amounts to outrage. The plaintiffs argue that Compass "arbitrarily" determined that its security surveillance videotape was not confidential and that it "had no reasonable basis for selecting the plaintiffs' pictures" and giving them to Bartlett. The plaintiffs have presented no evidence to support the assertion contained in their brief on appeal that the surveillance videotape was confidential. Also, there is no evidence to indicate that Compass "selected" the photographs of the plaintiffs. Pursuant to Bartlett's request, Compass provided Bartlett photographs of all of the people who conducted transactions in the bank lobby during the 20-minute time period surrounding the time the forged check was cashed. The information was provided to Bartlett as a part of his investigation of the forgery. The plaintiffs advance other reasonable alternatives to giving Bartlett the photographs he requested; those alternatives consist primarily of the assertion that Compass could have investigated the forgery itself. However, those alternatives do not negate the reasonableness of Compass's relying on a police investigation or the reasonableness of Bartlett's request for photographs of those people in the Compass lobby during the 20-minute period surrounding the cashing of the forged check. We cannot say that the plaintiffs have demonstrated that Compass's videotaping the plaintiffs, or its giving photographs from that tape to a law-enforcement officer during the course of a police investigation, was conduct that was "outrageous in character" and that it was outside "all possible bounds of decency." American Road Serv. Co.v. Inmon, 394 So.2d at 365. Therefore, we affirm the summary judgment on the plaintiffs' claim of outrage.
 III.
The plaintiffs' last argument is that the trial court erred in entering a summary judgment on their negligence claim. We note that a summary judgment is rarely appropriate on a claim of negligence. Nunnelee v. Cityof Decatur, 643 So.2d 543 (Ala. 1993). In order to defeat a properly supported motion for a summary judgment on a negligence claim, the plaintiffs must present substantial evidence that the defendant owed them a duty, that the duty was breached, and that the breach proximately caused damage or injury. Crowne Invs., Inc. v. Bryant, 638 So.2d 873
(Ala. 1994).
The plaintiffs cite Patrick v. Union State Bank, 681 So.2d 1364 (Ala. 1996), in support of their argument on the issue of negligence. InPatrick, an imposter opened a checking account with the defendant bank in the name of the plaintiff; the imposter issued a number of worthless checks. The plaintiff was arrested and incarcerated in connection with various merchants' prosecutions based on those worthless checks. The evidence indicated that the bank had not required the imposter to present sufficient identification at the time she opened the checking account in the plaintiff's name. Our supreme court reversed a summary judgment entered in favor of the bank, holding that the bank owed the plaintiff a duty to attempt to obtain adequate identification to prevent an imposter from opening an account in another's name. In so holding, the court also determined that the injury the plaintiff suffered as a result of the bank's opening an account in the name of the imposter was foreseeable.Patrick v. Union State Bank, supra. *Page 170 
In its summary-judgment motion and in its brief submitted to this court, Compass argued that the plaintiffs have failed to present evidence that it owed a duty to the plaintiffs. In their argument on this issue, the plaintiffs argue that Compass could have prevented the eventual publication of the newspaper article by conducting its own investigation into the forgery instead of cooperating with the police investigation of the forgery.
The determination whether a duty exists is a question of law. Patrickv. Union State Bank, supra. In determining whether a duty exists, the courts consider factors including public policy; social considerations; foreseeability; the nature of the defendant's activity; the relationship between the parties; and the type of possible injury or harm. Patrick v.Union State Bank, 681 So.2d at 1368 (citations omitted). "`The key factor is whether the injury was foreseeable by the defendant.'" Id. at 1368 (quoting Smitherman v. McCafferty, 622 So.2d 322, 324 (Ala. 1993)).
The plaintiffs have not cited any authority for the proposition that Compass was required to conduct its own investigation into the forgery rather than rely on a police investigation; they have also failed to cite to any authority supporting their argument that Compass owed a duty to its customers not to comply with the police investigation into the forgery. Given the facts of this case, and considering the factors set forth in Patrick v. Union State Bank, supra, we are not willing to impose such duties.
Also, foreseeability is the key factor in determining whether a duty exists. Patrick v. Union State Bank, supra; Smitherman v. McCafferty, supra.
 "A [party], who by some act or omission sets in motion a series of events, is not responsible for consequences of intervention of another agency, unless at the time of his original act or omission, the act of the intervening agency could reasonably be foreseen. If so, the causal chain is not broken. If the injury results from an independent intervening, efficient cause, not reasonably foreseeable, the original negligent act or omission is not the proximate cause of injury."
Vines v. Plantation Motor Lodge, 336 So.2d 1338, 1339 (Ala. 1976).
In this case, the evidence indicates that after Compass gave the photographs to Bartlett, Bartlett concluded that the plaintiffs were "strong suspects" in the forgery investigation. Bartlett then selected a photograph of the plaintiffs and asked Lakey to publish the photograph in the "Crimestoppers" section of The Cullman Times. Lakey did so, and the article that accompanied the photograph identified the plaintiffs as suspects in the forgery investigation. Thus, the record indicates that an independent, intervening act — the publication of the article inThe Cullman Times — occurred that arguably caused some injury to the plaintiffs.
The plaintiffs argue that it was foreseeable that "harm" could occur from Compass's giving their photograph to Bartlett. However, the appropriate question is whether Compass could have reasonably foreseen that, in supplying a police investigator with photographs of the people in its lobby during the relevant 20-minute period, the photograph of the plaintiffs would be published in a newspaper article that identified them as suspects in the cashing of the forged check. We must answer this question in the negative. We conclude that the plaintiffs have failed to demonstrate that Compass breached a duty it owed them; therefore, the plaintiffs are not entitled to a reversal of the trial *Page 171 
court's summary judgment in favor of Compass on their negligence claim.
The plaintiffs have failed to demonstrate that the trial court erred in entering a summary judgment in favor of Compass. The trial court's judgment is due to be affirmed.
AFFIRMED.
Yates, P.J., and Crawley and Pittman, JJ., concur.
Murdock, J., concurs in the result.